**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS BURLINSKI and MATTHEW MILLER on behalf of themselves and all other persons similarly situated, known and unknown,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:19-cv-06700** |
| **v.** | ) ) ) | **Honorable Edmond E. Chang** |
| **TOP GOLF USA INC., TOPGOLF USA SALT CREEK, LLC, and TOPGOLF USA NAPERVILLE, LLC,** | ) ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(b)(6)
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

DATED:  October 31, 2019

Respectfully submitted,

By:   _/s/_ Anne E. Larson_____
One of the Attorneys for Defendants
Top Golf USA, Inc., TopGolf USA Salt
Creek, LLC and TopGolf USA
Naperville, LLC

Anne E. Larson (ARDC No. 6200481)
Michael V. Furlong (ARDC No. 6317963)
**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone:  312.558.1220
_anne.larson@ogletree.com_
_michael.furlong@ogletree.com_

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................1

PROCEDURAL HISTORY .................................................................................2

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT ........................................................................................................5

    **A.**    Legal Standard ................................................................................5

    **B.**    The BIPA Statutory Damages Claims Are Barred By The IWCA's Exclusive Remedy Provisions.................................................................6

        **1.**    The SAC Pleads An "Accidental Injury" Because It Does Not Allege That Defendants Acted With Specific Intent To Injure Plaintiffs. ................................................................7

        **2.**    The SAC Pleads Facts To Show That The Injury "Arises Out of" Plaintiffs' Employment – *i.e.*, There Is A Causal Connection Between Their Employment And Injury.............................8

        **3.**    The SAC Pleads Facts To Show That The Alleged Injury Occurred "In the Course of" Plaintiffs' Employment............................9

        **4.**    The Injury is Compensable under the IWCA. ...................................10

        **5.**    Application of IWCA's Exclusive Remedy Provisions to BIPA Statutory Damages Claims Does Not Impact an Employee's Ability to Seek Injunctive Relief ................................................13

    **C.**    The SAC Is Time-Barred By The One-Year Statute of Limitations For Privacy Claims. ................................................................13

        **1.**    The SAC Pleads Privacy Claims Subject To A One-Year Statute of Limitations. ................................................................14

        **2.**    In The Alternative, The SAC Pleads Statutory Penalty Claims Subject To A Two-Year Statute of Limitations. ...................................16

        **3.**    Alternatively, the SAC Pleads Personal Injury Claims Subject to a Two-Year Statute of Limitations.....................................18

4.      **Plaintiffs' BIPA Claims Accrued When Defendants Failed to Comply With BIPA's Policy, Notice and Consent Requirements Prior to the Initial Collection of Their Fingerprints. ...........................................................19**

D.      **The SAC Pleads Legal Conclusions That Defendants "Recklessly" Violated BIPA, Which Must Be Dismissed Or Stricken. ................................20**

**CONCLUSION ...................................................................................................21**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abcarian v. McDonald,*
  617 F.3d 931 (7th Cir. 2010) ................................................................................... 5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................. 5

*Barlow v. United States,*
  32 U.S. 404 (1833) ................................................................................................. 18

*Barnard v. City of Chicago Heights,*
  1992 WL 309566 (N.D. Ill. 1992) ..................................................................... 12, 17

*Benitez v. KFC Nat'l Mgm't Co.,*
  305 Ill.App.3d 1027, 1038 (2d Dist. 1998) ............................................................ 13

*Bercaw v. Domino's Pizza, Inc.,*
  258 Ill.App.3d 211 (2d Dist. 1994) .......................................................................... 8

*Blair v. Nevada Landing P'ship,*
  369 Ill.App.3d 318 (2d Dist. 2006) ............................................................. 14, 15, 18

*Brown v. Cook County,*
  2018 U.S. Dist. LEXIS 106746 (N.D. Ill. June 26, 2018) ........................................ 5

*Caterpillar Tractor Co. v. Indus. Com,*
  129 Ill.2d 52 (1989) ............................................................................................. 9, 10

*Colliers v. Wagner Castings Co.,*
  81 Ill.2d 229 (1980) ................................................................................................. 7

*Copass v. Illinois Power Co.,*
  211 Ill.App.3d 205 (4th Dist. 1991) ..................................................................... 7, 8

*Doe v. La Magdalena II, Inc.,*
  585 F.Supp. 984 (N.D. Ill. 2008) ............................................................................. 6

*Elmore v. Salas,*
  2016 WL 2755326 (N.D. Ill. May 12, 2016) ............................................................ 6

*Folta v. Ferro Engineering,*
  2015 IL 118070 .................................................................................... 6, 10, 11, 12

*Garland v. Morgan Stanley & Co., Inc.,*
  2013 IL App (1st) 112121 ........................................................................................ 8

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ..................................................................................... 11, 17

*Hernon v. E.W. Corrigan Constr. Co.*,
    149 Ill.2d 190 (1992) ........................................................................................................ 13

*Huggins v. SpaClinic, LLC*,
    No. 09 C 2677, 2010 WL 963924 (N.D. Ill. Mar. 11, 2010) .............................................. 20

*Johnson v. Gen. Bd. of Pension and Health Ben. of United Methodist Church*,
    2016 WL 2865154, 2016 IL App (1ˢᵗ) 14-1793-U .......................................................... 14

*Knolls Condo Ass'n v. Harms*,
    202 Ill.2d 450 (2002) ........................................................................................................ 12

*Komorowski v. All-American Indoor Sports, Inc.*,
    No. 13-2177, 2013 WL 4766800 (D. Kan. Sept. 4, 2013) ................................................ 20

*Landis v. Marc Realty, L.L.C.*,
    235 Ill.3d 1, 13-14 (2009) .......................................................................................... 15, 16

*Livingston v. Meyers*,
    6 Ill.2d 325 (1955) ........................................................................................................... 18

*Logan v. Wilkins*,
    644 F.3d 577 (7th Cir. 2011) ............................................................................................. 6

*Mayfield v. ACME Barrel Co.*,
    258 Ill.App.3d 32 (1st Dist. 1994) ...................................................................................... 8

*Meerbrey v. Marshall Field & Co., Inc.*,
    139 Ill.2d 455 (1990) ............................................................................................... 6, 7, 11

*Mitchell v. White Motor Co.*,
    58 Ill.2d 159 (1974) ......................................................................................................... 17

*Namur v. Habitat Co.*,
    294 Ill.App.3d 1007 (1st Dist. 1998) ............................................................................... 16

*Orgone Capital III, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) .................................................................................... 12, 17

*Popko v. Contl. Cas. Co.*,
    355 Ill.App.3d 257 (1st Dist. 2005) .................................................................................. 15

*Pub. Fin. Corp. v. Davis*,
    66 Ill. 2d 85 (1976) .......................................................................................................... 19

*Rivera v. Google Inc.*,
    238 F.Supp.3d 1088 (N.D. Ill. 2017) ............................................................................... 16

*Rosenbach v. Six Flags Entertainment Corp.*,
  2019 IL 123186 ............................................................................................................*passim*

*Senesac v. Employer's Voc. Res.*,
  324 Ill.App.3d 380 (1st Dist. 2001) .................................................................................. 8

*Unger v. Continental Assurance Co.*,
  107 Ill.2d 79 (1985) ....................................................................................................... 10

*Upton v. Tribilcock*,
  91 U.S. 45 (1875) ........................................................................................................... 18

*Vidoni v. Acadia Corp.*,
  No. 11-cv-00448, 2012 WL 1565128 (D. Me. Apr. 27, 2012) ...................................... 20

**Statutes**

735 ILCS 5/13-201 .............................................................................................................*passim*

735 ILCS 5/13-202 .................................................................................................15, 16, 17, 18

740 ILCS 14/1 *et seq.* ........................................................................................................*passim*

740 ILCS 14/10 .........................................................................................................................4

740 ILCS 14/15 ................................................................................................................. 4, 9, 18

740 ILCS 14/15(b) ....................................................................................................................4

740 ILCS 14/15(d) ....................................................................................................................4

740 ILCS 14/20(1) .......................................................................................................... 5, 14, 16

740 ILCS 14/20(2) .......................................................................................................... 5, 14, 16

765 ILCS 1075/10 ....................................................................................................................14

765 ILCS 1075/30 ....................................................................................................................14

820 ILCS 305/5(a) ............................................................................................................. 1, 6, 7

820 ILCS 305/11 ............................................................................................................... 1, 6, 7

Illinois Workers' Compensation Act...............................................................................1, 10

Illinois Workers' Occupational Diseases Act ...................................................................12

Right of Publicity Act...............................................................................................................14

Uniform Single Publication Act.............................................................................................14

## INTRODUCTION

Plaintiffs Thomas Burlinski ("Burlinski") and Matthew Miller ("Miller") ("plaintiffs") have filed a putative class action under the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Defendants Top Golf USA Inc., TopGolf USA Salt Creek, LLC and TopGolf USA Naperville, LLC ("Topgolf" or "defendants") move to dismiss the Second Amended Class Action Complaint ("SAC") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

The exclusive remedy provisions of the Illinois Workers' Compensation Act ("IWCA") preempt plaintiffs' statutory damages claims under BIPA. *See* 820 ILCS 305/5(a) and 11. The IWCA was established as a "grand bargain" between employers and employees that makes workers' compensation the "exclusive remedy" for workplace injuries that meet its exclusive remedy test (*i.e.*, an accidental injury that arises out of and in the course of the employment). Its purpose is to impose liability without fault upon the employer and, in return, relieve the employer of employee lawsuits seeking "large damages verdicts" such as that sought in this case.

Here, the SAC pleads an "accidental" injury because it fails to allege that defendants acted with "specific intent to injure plaintiffs." Workplace injuries are inherently "accidental" within the meaning of the IWCA exclusive remedy rule, unless the SAC alleges the employer specifically intended to injure plaintiffs. The "arising out of" and "in the course of the employment" elements are met because the SAC pleads facts to show that plaintiffs' alleged injuries are causally connected to their employment, to duties they were required to perform at work, and occurred at work.

The IWCA's regulatory purpose would be defeated if plaintiffs are allowed to proceed with this lawsuit. By contrast, applying the IWCA's exclusive remedy provisions to preempt statutory damages claims under BIPA will have no impact on any employee's ability to file suit and seek an "injunction" under Section 20(4) of BIPA to enjoin ongoing BIPA violations. The injunctive relief that remains available to employees under BIPA ensures the purposes behind this "informed consent"

statute are met. This harmonizes both statutes, as the Illinois Supreme Court directs courts to do.

The BIPA claims are also time-barred because plaintiffs did not file their lawsuit within one year after their causes of action accrued under the one-year statute of limitations applicable to privacy claims. *See* 735 ILCS 5/13-201. In the alternative, the two-year statute of limitations should apply (if the one-year limitations period does not), and the claims of any putative class member that fall outside the two-year statute of limitations should be dismissed with prejudice. Plaintiffs' "reckless" violation claims should also be dismissed, or alternatively stricken, because the SAC is bereft of any factual allegations of reckless conduct.

## PROCEDURAL HISTORY

Burlinski initially filed this putative class action in state court on March 4, 2019, alleging a BIPA violation. The original Complaint alleged Burlinski "experienced injury in the form of mental anguish." (ECF No. 1-1, p. 130, ¶¶ 34-35.) Defendants sought leave to file a Motion to Dismiss on May 20, 2019, arguing that Burlinski had pled himself out of court because the Complaint's allegations (and supporting case law) demonstrate that his BIPA claim is preempted by the IWCA's exclusive remedy provisions and time-barred by the applicable statutes of limitations. (*Id.*, pp. 58, 100.) Burlinski moved for leave to file an Amended Complaint on May 23, 2019, just three days later. (*Id.*, p. 80.) The draft amended complaint did not add new facts, like the usual motion to amend, but (a) deleted the negligence count and allegation that the BIPA violation caused Burlinski "emotional distress" and "mental anguish" – plainly an injury compensable under the IWCA, and (b) changed the alleged Section 15 BIPA violation from a single count to three counts.

Defendants objected. They argued Burlinski's attempt to amend the Complaint was futile because it did not cure the pleading deficiencies and that allowing him to amend after pleading himself out of court unduly prejudiced defendants. (*Id.*, p. 50.) The Circuit Court of DuPage County granted Burlinski leave to file his First Amended Complaint ("FAC"), which he filed on July 31. (*Id.*, p. 25.)

On September 11, 2019, plaintiffs filed a Second Amended Complaint ("SAC") that added Miller as a named plaintiff and Topgolf [sic] USA Naperville, LLC as a defendant. (*Id.,* p. 2.) The SAC asserts the same material allegations as the FAC and made only stylistic changes to include Miller as plaintiff. On October 9, 2019, defendants removed this action to this Court pursuant to 28 U.S.C. §1446 and 28 U.S.C. §1332(a)(1) and (d)(2).

The FAC and SAC made the following changes to the initial Complaint. Plaintiffs deleted all allegations that claimed Burlinski and the class members "experience[] emotional distress" as a result of defendants' purported actions. In fact, the FAC and SAC added a footnote that specifically states: "Plaintiff does not allege that he and others similarly situated suffered *physical* or *psychological* injuries during their employment as a result of Defendant's [sic] violations of the Biometric Information Privacy Act." (*Id.*, p. 26, ¶ 12, fn. 1 (FAC); pp. 3-4, ¶ 13, fn. 1 (SAC).)

Plaintiffs also deleted the negligence count and the allegation that Burlinski "experienced personal injury in the form of mental anguish." Despite removing all references to actual damages such as emotional distress and mental anguish, plaintiffs' requests for relief now seek "liquidated or actual monetary damages, whichever is higher." (*Id.*, pp. 9-10, 12, 31, 33-34 (FAC and SAC Counts I-III "Wherefore Clause A").)

## FACTUAL BACKGROUND

The SAC alleges that plaintiffs used defendants' biometric time tracking system "throughout their employment" to record their time worked. (*Id.*, p. 2, ¶4.) Plaintiffs allege Burlinski worked for defendants from April 2017 to July 2017 and Miller worked "during 2017, 2018, and 2019." (*Id.*, p. 2, ¶¶2-3.) Defendants allegedly "captured, collected, and stored [p]laintiffs' fingerprint, or a representation derived from [p]laintiffs' fingerprint" to enroll them in the biometric timekeeping system and, at the same time, "disseminated and disclosed [their fingerprints] to [d]efendants' time-keeping vendor" without their consent. (*Id.*, p. 8 ¶¶30-33, p. 10 ¶59.)

3

The SAC further alleges that "[d]efendants required [p]laintiffs … to scan their fingerprints in [d]efendants' biometric time clock when they started working a shift, stopped for a break, returned from a break, and finished working a shift." (*Id.,* p. 3 ¶5.) In short, the SAC alleges that each plaintiff's collected fingerprint was used to communicate and authenticate his presence in the facility and time worked. (*Id.*, p. 2, ¶4, p. 3, ¶¶5, 7.)

Section 15(b) requires private entities to comply with BIPA's notice and consent requirements *before* they collect an individual's biometric identifier[1] or biometric information:[2]

> (b)    No private entity may collect, capture, purchase, receive through trade or otherwise obtain a person's or a customer's biometric identifier or biometric information, *unless it first*:
>
> > (1)    informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
> >
> > (2)    informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> >
> > (3)    receives a written release executed by the subject of the biometric identifier or biometric information….

740 ILCS 14/15(b); *see also* ECF No. 1-1, pp. 5-6, ¶¶26-29 (SAC).

Section 15(d) prohibits a "private entity in possession of a biometric identifier or biometric information" from "disclos[ing], redisclos[ing], or otherwise disseminat[ing] [it] unless (1) the subject … consents to the disclosure or redisclosure." 740 ILCS 14/15(d)(1).

The SAC does not allege that defendants acted with specific intent to injure plaintiffs. Instead, it alleges that defendants violated Section 15 of BIPA by:

---

[1] "Biometric identifiers" are defined to include a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *See* 740 ILCS 14/10.

[2] "Biometric information" means "any information … based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." *See* 740 ILCS 14/10.

51.     … possessing Plaintiffs' … fingerprints and information based on their fingerprints without creating and adhering to a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric identifiers and information.

57.     … capturing or collecting Plaintiffs'… fingerprints and information based on [their] fingerprints without first informing them in writing ….

58.     … capturing or collecting Plaintiffs' … fingerprints and information based on their fingerprints without first informing them in writing of the purpose of Defendants doing so and the length of time Defendants would store and use Plaintiff's [sic]… biometric identifiers and/or biometric information.

59.     … capturing or collecting Plaintiff's [sic]… fingerprints and information based on their fingerprints without first obtaining their written consent or other release authorizing Defendants to capture or collect Plaintiff's [sic] biometric identifiers and/or biometric information.

65.     … disclosing or otherwise disseminating Plaintiffs' … fingerprints and information based on their fingerprints to Defendant's [sic] time-keeping vendor without first obtaining their consent for that disclosure or dissemination.

(*Id.,* p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.) Plaintiffs seek liquidated or actual damages "for each negligent or reckless violation of [BIPA], pursuant to 740 ILCS 14/20(1)-(2)." (*Id.,* pp. 9-10, 12 (Counts I-III "Wherefore Clause A").)

## ARGUMENT

### A.     Legal Standard

In ruling on a Rule 12(b)(6) Motion to Dismiss, a court views the complaint in the light most favorable to the plaintiff, accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id. See Brown v. Cook County*, 2018 U.S. Dist. LEXIS 106746, *46-47 (N.D. Ill. June 26, 2018) ("Because the plaintiffs have offered nothing more than this conclusory statement …, the Court grants the County's motion to dismiss").

A plaintiff "plead[s] himself out of court … by alleging facts inconsistent with his theory of relief." *Elmore v. Salas*, 2016 WL 2755326, *4 (N.D. Ill. May 12, 2016). If a plaintiff's allegations demonstrate that his claim is barred by the IWCA exclusive remedy provision or the applicable statute of limitations, the complaint must be dismissed for failure to state a claim. *See Doe v. La Magdalena II, Inc.*, 585 F.Supp. 984, 986 (N.D. Ill. 2008) (plaintiff's negligence claims were preempted by the IWCA's exclusive remedy provisions; the "allegations in the complaint plainly foreclose" any exception to the exclusivity rule); *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (case dismissed with prejudice under Rule 12(b)(6) when the statute of limitations defense was apparent on the complaint's face).

## B. The BIPA Statutory Damages Claims Are Barred By The IWCA's Exclusive Remedy Provisions.

The IWCA makes workers' compensation the "exclusive remedy" for "accidental injuries arising out of and in the course of the employment." 820 ILCS 305/5(a) and 11. The purpose of the IWCA's exclusive remedy provisions is to impose liability without fault on the employer and, in return, relieve the employer of employee lawsuits seeking "large damage verdicts" as here:

> The Workers' Compensation Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment. Accordingly, the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer. The exclusive remedy provision "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts."

*Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill.2d 455, 462 (1990), citing 2A A. Larson, Law of Workmen's Compensation §65.11 (1988). *See also Folta*, 2015 IL 118070, ¶12 ("In exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries … arising out of and in the course of employment").

Section 5(a) of the IWCA applies the exclusive remedy provision not only to "common law" actions but also to a "statutory right to recover damages from the employer" such as BIPA. 820 ILCS 305/5(a). Section 5(a) limits employees to the compensation provided by the IWCA when they have

a "common law or *statutory right to recover damages* from the employer" for "injury … sustained … while engaged in the line of his duty":

> No common law or *statutory right to recover damages* from the employer, his insurer, … or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act….

820 ILCS 305/5(a) (emphasis added).

Section 11 explicitly states that the compensation provided by the IWCA is the employer's full "measure of responsibility" for "accidental injuries sustained by any employee arising out of and in the course of the employment":

> The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer … for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act….

820 ILCS 305/11.

Collectively, Sections 5 and 11 of the IWCA bar this BIPA action unless plaintiffs prove their injuries: (1) were not accidental but intentionally inflicted by defendants, (2) did not arise from their employment, (3) did not occur during the course of their employment, or (4) are not compensable under the IWCA. *Meerbrey*, 139 Ill. 2d at 462-63.

The SAC does not plead any of these exceptions to the IWCA's exclusivity rule. Instead, the SAC's allegations show the exclusive remedy provisions – "an accidental injury that arises out of and in the course of employment" – are met.

### 1. The SAC Pleads An "Accidental Injury" Because It Does Not Allege That Defendants Acted With Specific Intent To Injure Plaintiffs.

The IWCA's exclusive remedy provisions have an "accidental injury" requirement so employers cannot *intentionally injure* employees and then argue that employee lawsuits should be preempted by the Act. *See Colliers v. Wagner Castings Co.*, 81 Ill.2d 229, 240 (1980); *Copass v. Illinois Power*

*Co.*, 211 Ill.App.3d 205, 212 (4th Dist. 1991). Workplace injuries are construed to be "accidental" within the meaning of the exclusive remedy rule, however, unless the complaint alleges the employer specifically intended to injure plaintiff. *Id.* at 212-14.

This is called the "specific intent to injure plaintiff" rule in cases applying the IWCA exclusive remedy test. To strip the injury of its "accidental character," plaintiff must allege the employer acted with "specific intent to injure plaintiff." *Copass* at 214; *Mayfield v. ACME Barrel Co.*, 258 Ill.App.3d 32, 35 (1ˢᵗ Dist. 1994) ("only when the employer acts with specific intent to injure the employee that the resultant injury is stripped of its accidental character"); *Garland v. Morgan Stanley & Co., Inc.*, 2013 IL App (1st) 112121, ¶29 (plaintiff "must allege that the defendant acted deliberately with specific intent to injure the employee"); *Bercaw v. Domino's Pizza, Inc.*, 258 Ill.App.3d 211, 217 (2d Dist. 1994) (affirming preemption of claim by the IWCA and finding the alleged injury "accidental" because "plaintiffs have not alleged a specific intent by [defendant] to harm Bercaw").

Here, the SAC does not allege a "specific intent by defendants to injure plaintiffs." Instead, it repeatedly alleges what defendants "failed to do." The whole thrust of the SAC is a series of omissions – *i.e.*, failure to give notice or obtain a signed consent. Omissions are the antithesis of an intentional act. Because the SAC does not allege defendants intended to injure plaintiffs, the alleged injuries remain "accidental" under the exclusive remedy rule. Accordingly, plaintiffs have not (and cannot) establish the first exception to the exclusivity rule – that the alleged injuries were not accidental but intentionally inflicted by defendants.

### 2. The SAC Pleads Facts To Show That The Injury "Arises Out of" Plaintiffs' Employment – *i.e.*, There Is A Causal Connection Between Their Employment And Injury.

The IWCA's exclusive remedy test requires the alleged injury to "arise out of" the employment to ensure the injury is causally connected to the employment. *Senesac v. Employer's Voc. Res.*, 324 Ill.App.3d 380, 386 (1st Dist. 2001). An injury "arises out of" and is causally connected to the

employment "if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties." *Caterpillar Tractor Co. v. Indus. Com*, 129 Ill.2d 52, 58 (1989).

The SAC pleads the necessary causal connection between plaintiffs' employment and injuries. It alleges that "throughout their employment" beginning in "2017," they were "required to use a biometric time clock to record their time worked" – "when they started working a shift, stopped for a break, returned from a break, and finished working a shift." (ECF No. 1-1, p. 2 ¶¶2-4, p. 3 ¶5 (SAC).) It further alleges that defendants failed to comply with Section 15's informed consent requirements before they collected plaintiffs' biometric information or re-disclosed it to their biometric vendor and that these alleged BIPA violations caused their injuries. (*Id.*, p. 3 ¶12, p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.)

Here, the SAC pleads the necessary causal connection between plaintiffs' employment and their injuries. It pleads facts that show plaintiffs' alleged injuries are causally connected to their employment, to duties they were required to perform at work, and which occurred at work. It is only by virtue of their employment at Topgolf that plaintiffs are able to bring these claims because their work is what required them to use the biometric time clock. The second exception for injuries that did "not arise out of the employment" does not apply.

### 3. The SAC Pleads Facts To Show That The Alleged Injury Occurred "In the Course of" Plaintiffs' Employment.

Injuries sustained on an employer's premises and during working hours while an employee performs his work duties are deemed to arise "in the course of the employment." *Caterpillar*, 129 Ill.2d at 57. Here, the SAC alleges that when plaintiffs were hired in "2017," defendants allegedly "captured, collected, and stored [p]laintiffs' fingerprints" to enroll them in their biometric timekeeping system *without first* complying with Section 15 of BIPA. (*Id.*, p. 3 ¶12, p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.) It

further alleges they were "required to use a biometric time clock" "when they started working a shift, stopped for a break, returned from a break, and finished working a shift." (*Id.*, p. 2 ¶4, p. 3 ¶5.)

Thus, the injuries plaintiffs sustained occurred during working hours, at the location where they worked, and while performing their job duties – *i.e.*, in the course of their employment. The third exception to the exclusivity rule – that the injury did "not arise in the course of their employment" – is inapplicable.

### 4. The Injury is Compensable under the IWCA.

The Illinois Supreme Court has explained the test for when an injury is "compensable" under the IWCA: "In order for an injury to be compensable under the Workers' Compensation Act, the injury must arise out of and in the course of the employment." *Caterpillar*, 129 Ill.2d 52, 56 (Ill. 1989).

For over 50 years, the Illinois Supreme Court has consistently construed Section 5(a)'s and Section 11's exclusive remedy provisions broadly to hold that an injury will be found to be "compensable under the Act" when it "aris[es] out of and in the course of the employment." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶18, citing *Sjostrom v. Sproule*, 33 Ill.2d 40, 43 (1965) ("a 'compensable injury was one suffered in the line of duty, which meant that the injury arose out of and in the course of employment"); *Unger v. Continental Assurance Co.*, 107 Ill.2d 79, 85 (1985) ("The pivotal question … is whether the injury alleged is compensable under the Act. An injury will be found to be compensable if it 'aris[es] out of and in the course of the employment."").

In *Folta*, the Illinois Supreme Court rejected the appellate court's attempt to change this longstanding definition of "compensability" - *i.e.*, an injury is compensable under the IWCA if it "arises out of and in the course of the employment." There, plaintiff argued his inability to pursue his time-barred claim in the IWCA Commission literally made his injury "not compensable under the Act." 2015 IL 118070, ¶7. The appellate court agreed with Folta's argument and reasoned that *Meerbrey*'s fourth exception would be rendered "superfluous" by this definition of compensability because

*Meerbrey* already contained exceptions for "injuries that did not arise from a worker's employment" or "were not received during the course of employment." *Folta*, 2014 IL App (1st) 123219, ¶¶29-30.

The Illinois Supreme Court reversed and held Folta's tort claim was preempted by the IWCA's exclusive remedy provisions. It explained that "since 1956, this court has held that despite limitations on the amount and type of recovery under the Act, the Act is the employee's exclusive remedy for workplace injuries" that meet the exclusive remedy test. *Folta*, 2015 IL 118070 at ¶30. Folta's injury remained "compensable under the Act" because it was causally connected to his employment, to duties he was required to perform at work, and occurred at work. *See Folta* at ¶61 ("the majority's interpretation of the fourth exception is quite different from that of the appellate court" and "the majority appears to agree with Ferro that whether an injury is compensable is defined by the scope of the Act's coverage").

Because the SAC pleads facts to show the alleged injury "arises out of and in the course of the employment," it is compensable under the IWCA. The fourth exception to the exclusivity rule – that plaintiffs' injury is not compensable under the Act – does not apply.

a. **The Court should take judicial notice of the allegations of "emotional distress" pled in the initial Complaint in finding the "injury compensable under the IWCA."**

The Illinois Supreme Court has held that "emotional distress" and "mental anguish," as alleged in the initial Complaint, is compensable under the IWCA. *See Folta*, ¶20 (emotional distress is "within the concept of how we defined an accidental injury" and falls within the IWCA's coverage), citing *Pathfinder Co. v. Industrial Comm'n*, 62 Ill.2d 556, 563 (1976) (holding 43 years ago that "the strength of the trend [is] toward coverage" by the IWCA's exclusive remedy provisions). Accordingly, this Court should take judicial notice of these emotional distress and mental anguish allegations in finding the "injury compensable under the IWCA" and, thus, preempted by the IWCA. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("The district court properly considered the public court documents

in deciding the defendants' motions to dismiss").

Plaintiffs should not be permitted to selectively edit their allegations only to "plead around" a motion to dismiss. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) (affirming dismissal based in part on factual allegations pled in a prior complaint and subsequently deleted in response to a motion to dismiss; "the court is entitled to take judicial notice of a complaint and its contents" where the amended complaint deleted prior allegations); *Barnard v. City of Chicago Heights*, 1992 WL 309566, *7 (N.D. Ill. 1992) (because plaintiff "selectively edited the version of the facts which now make up" her amended complaint, the court "takes judicial notice of the facts contained in" her prior complaints in dismissing count II).

> **b.      The IWCA does not require an injury to be "physical" or "emotional" to be "compensable under the IWCA."**

Even if the Court decides not to take judicial notice of the intentional deletion of plaintiffs' "emotional distress" and "mental anguish" injuries from the initial Complaint, that does not take the BIPA claims outside the IWCA's coverage. The IWCA does not require plaintiffs to plead a physical or emotional injury for their claims to be preempted by the IWCA's exclusive remedy provisions. As expressed by its plain language, the sole requirement of Sections 5(a) and 11 is that the injury be "accidental" and "arise out of and in the course of the employment." 820 ILCS 305/5(a) and 11.

By contrast, the plain language of the Illinois Workers' Occupational Diseases Act ("IWODA"), 820 ILCS 310/5(a), expressly limits its exclusive remedy provisions to "any injury to health, disease, or death therefrom."   IWODA has the kind of limiting language that some non-precedential state court decisions have attempted to read into Sections 5(a) and 11 of the IWCA. But, the IWCA's exclusive remedy provisions do not contain any language that limits the IWCA's application to only physical and psychological injuries.

Courts determine the legislature's intent by examining the statutory language, which is "best determined from the plain and ordinary language used in the statute. When the statutory language is

plain and unambiguous," as here, courts "may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may [they] add provisions not found in the law." *See Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶24.

In sum, the Illinois Supreme Court holdings in *Folta* and *Rosenbach* leave no doubt that plaintiffs have allegedly suffered an "injury … compensable under the Act" that mandates application of the IWCA's exclusive remedy provisions. *See Folta* at ¶¶18, 61 ("an injury will be found to be compensable if it arose out of and in the course of employment" and "whether an injury is compensable is defined by the scope of the Act's coverage"). *See also Benitez v. KFC Nat'l Mgm't Co.*, 305 Ill.App.3d 1027, 1038 (2d Dist. 1998) (affirming preemption of plaintiffs' invasion of privacy claims against employer by the IWCA's exclusive remedy provisions). Accordingly, plaintiffs' BIPA claims are preempted by the IWCA and must be dismissed with prejudice.

### 5. Application of IWCA's Exclusive Remedy Provisions to BIPA Statutory Damages Claims Does Not Impact an Employee's Ability to Seek Injunctive Relief

BIPA and the IWCA can be harmonized even where the IWCA preempts BIPA employee statutory damages claims. Application of the exclusivity rule to employee BIPA claims will have no impact on an employee's ability to file suit, bring compliance violations to the court's attention, and obtain orders enjoining BIPA violations under Section 20(4). Only an employee's statutory damages claim will be preempted by the IWCA, so the "informed consent" purpose behind the IWCA is not defeated or thwarted. This "harmonizes" the IWCA and BIPA, as the Illinois Supreme Court requires. *See Knolls Condo Ass'n v. Harms*, 202 Ill.2d 450, 459 (2002) (the "court has a duty to interpret the statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible").

### C. The SAC Is Time-Barred By The One-Year Statute of Limitations For Privacy Claims.

The Illinois General Assembly did not include a statute of limitations when it enacted BIPA.

In such instances, courts look to existing Illinois statutes of limitations and apply the most specific one. *See Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill.2d 190 (1992), citing *Calumet Country Club v. Roberts Environmental Corp.*, 136 Ill.App.3d 610, 612 (2d Dist. 1985) (where two statutes of limitations arguably apply to the same action, the "specific" statute of limitations trumps or "takes precedence over the general limitations period of section 13-205").

Here, the most specific, applicable statute of limitations is the one-year period for privacy claims, 735 ILCS 5/13-201. The Illinois Supreme Court recently explained that BIPA was enacted to protect biometric identifiers and biometric information "before they are or can be compromised." *Rosenbach*, 2019 IL 123186, ¶36. Thus, the sooner plaintiffs put a defendant company on notice of any alleged BIPA violation, the sooner the company can investigate and take steps to better protect any biometric identifiers or information.

### 1.     The SAC Pleads Privacy Claims Subject To A One-Year Statute of Limitations.

Privacy claims are governed by the one-year statute of limitations in 735 ILCS 5/13-201:

> Defamation – Privacy. Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.

This Court is being asked to address a new biometric technology that did not even exist when this "privacy" statute of limitations was enacted. While it is true that Section 13-201's application to privacy rights appears conditioned on a "publication," a publication or dissemination can occur both within a company and outside it. *See Popko v. Contl. Cas. Co.*, 355 Ill.App.3d 257, 265 (1st Dist. 2005) ("element of publication is satisfied, even within a corporate environment, where the communication is made to any third party").

Publications can occur via emails, voice mails, social media and phone recordings. For example, in *Johnson v. Gen. Bd. of Pension and Health Ben. of United Methodist Church*, plaintiff filed an "invasion of privacy – public disclosure of private facts" claim when her employer recorded her private

phone line at work without her written consent. The court found this was a "publication of private information" but dismissed her claim as untimely under Section 13-201's one-year statute of limitations. 2016 WL 2865154, 2016 IL App (1st) 14-1793-U.

Here, the SAC alleges that defendants' "biometric time clock system" was in use at the time plaintiffs were hired in 2017 and that they used it "[t]hroughout their employment." (ECF No. 1-1, p. 2 ¶¶ 2-4 (SAC).) The SAC further alleges that defendants violated plaintiffs' "privacy rights" by collecting their "fingerprints" (without the required policy, notices and written consent) to enroll them in their time tracking system, used the stored fingerprints to communicate or electronically announce their presence at the facility and their time worked and, at the same time, disclosed their fingerprints without authorization to their third-party vendor. (*Id.*, p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.) There is no basis, temporal or otherwise, on which to separate these Section 15 violations. They plainly allege a "publication of matter violating the right of privacy."

The *Rosenbach* court at ¶33 held BIPA created a privacy right: "Our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." The Illinois Supreme Court and General Assembly further placed subsections (a)-(d) of Section 15 on an equal footing by rejecting any characterization of BIPA violations as "technical" and by making statutory damages the same no matter which subsection may have been violated. *See Rosenbach* at ¶34; *see also* 740 ILCS 14/20(1)-(2). By treating Sections 15(a)-(c) no differently than a Section 15(d) "unauthorized disclosure" or publication which is subject to a one-year statute of limitations, the General Assembly and Supreme Court have made all BIPA violations subject to Section 13-201's one-year limitations period.

The application of Section 13-201's one-year statute of limitations to analogous privacy statutes (with comparable language and protections) further supports its application to BIPA. BIPA's purpose is to give individuals the right to control when a private entity can capture, use, store or

disclose their biometric information by requiring prior consent. The Illinois Right of Publicity Act ("Publicity Act") serves a nearly identical purpose – it gives individuals the "right to control and choose whether and how" their "identity" is used "for commercial purposes." 765 ILCS 1075/10.

In *Blair*, the court applied Section 13-201's one-year statute of limitations to the Publicity Act, which prohibits the misappropriation of one's likeness without written consent for another's commercial benefit. *Blair v. Nevada Landing P'ship*, 369 Ill.App.3d 318, 324 (2d Dist. 2006); 765 ILCS 1075/30. There, the defendant took (or captured) Blair's photo and used it many times after that for the defendant's commercial purposes. The court held the violation was complete and the statute of limitations began running at the time the photo was taken and first published under the Uniform Single Publication Act.

Just as in *Blair*, defendants allegedly collected plaintiffs' fingerprints (their biometric "likeness") without the required policy, notices and written consent, disseminated their fingerprints to Topgolf's electronic time tracking system and to their third-party biometric vendor without their consent for a commercial purpose, *i.e.*, the operation of Topgolf's business. Again, there is no basis, temporal or otherwise, on which to separate the Section 15 violations, and no reason to do so. They plainly involve a "publication of matter violating the right of privacy." 735 ILCS 5/13-201. *See Blair*, 369 Ill.App.3d at 324.

Thus, the SAC pleads facts that squarely place plaintiffs' BIPA claims within Section 13-201's one-year statute of limitations for privacy violations. When applying the SAC's allegations, along with BIPA's language and purpose, and the above authority, the Court should find that this action for violation of plaintiffs' rights "to maintain [their] biometric privacy" is subject to the one-year statute of limitations.

2.  **In The Alternative, The SAC Pleads Statutory Penalty Claims Subject To A Two-Year Statute of Limitations.**

In Illinois, claims for statutory penalties and personal injuries are governed by a two-year

statute of limitations, 735 ILCS 5/13-202:

> Personal injury – Penalty. Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, . . . shall be commenced within 2 years next after the cause of action accrued.

In *Landis v. Marc Realty, L.L.C.*, 235 Ill.3d 1, 13-14 (2009), the Illinois Supreme Court explained the difference between statutory penalty and remedial statutes. A "statute is remedial where it 'imposes liability only when actual damage results from a violation' and where 'liability is contingent upon damage being proven by the plaintiff.'" *Id.* at 13. By contrast, a statute is penal when it imposes automatic liability for a violation of its terms, sets forth a predetermined amount of damages and imposes liability regardless of plaintiffs' actual damages. *Id.* Statutes can also be both penal and remedial. *See Namur v. Habitat Co.*, 294 Ill.App.3d 1007, 1010-11 (1st Dist. 1998) (ordinance was both penal and remedial but "action is one for a 'penalty' within the meaning of section 13-202" because plaintiffs sought to recover only under the ordinance's fixed or formulaic damages).

A statutory penalty claim is alleged when the statute imposes automatic liability for a violation of its terms, the amount of liability is predetermined by the act and imposed without actual damages suffered by the plaintiff. *Namur*, 294 Ill.App.3d at 1010-11. Here, both elements are met. There is "automatic liability for a violation of [BIPA's] terms" because the SAC pleads defendants "negligently" or "recklessly" violated BIPA. (*Id.*, p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.) "Automatic liability for a violation of its terms" does not mean strict liability (*i.e.*, liability without fault), but liability resulting from a negligent or reckless violation. *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1104 (N.D. Ill. 2017) (BIPA "only subjects violators to statutory damages if there is negligence … recklessness, or intent to violate the Act" citing to 740 ILCS 14/20(1)-(2)). Plaintiffs further seek "predetermined" statutory damages of $1,000 for each negligent violation of BIPA and $5,000 for each reckless violation. (*Id.*, pp. 9-10, 12, Counts I-III Wherefore Clause A).)

Plaintiffs may contend that the test's second element is not met because the SAC seeks

"liquidated or actual monetary damages, whichever is higher." However, plaintiffs have pled no facts to support an award of actual damages. Instead, they dropped their "emotional distress" and "mental anguish" allegations, which might have supported an award of actual damages. Plaintiffs cannot rely on conclusory allegations of "actual damages" when the SAC is bereft of facts to assert a plausible claim for "actual damages."

As the Illinois Supreme Court explained in *Landis*, a claim seeking predetermined statutory damages is a "statutory penalty" subject to Section 13-202 where, as here, the statutory "relief available . . . is not dependent on plaintiffs' actual damages." *Id.* at 14. In *Rosenbach*, the Illinois Supreme Court explained that the General Assembly's intent was to "subject[] private entities who fail to follow the statute's requirements to substantial potential liability" for "preventative and deterrent purposes." *Rosenbach*, 2019 IL 123186, ¶¶36-37. That is the essence of a statutory penalty.

Thus, the two-year statute of limitations for statutory penalties should apply (if the one-year limitations period does not), and the claims of plaintiffs and any putative class member that fall outside the two-year statute of limitations should be dismissed with prejudice.

3. **Alternatively, the SAC Pleads Personal Injury Claims Subject to a Two-Year Statute of Limitations.**

The SAC also can be construed to allege personal injury claims based on negligent or reckless conduct. The SEC alleges that defendants owed statutory duties to plaintiffs and negligently or recklessly violated (or breached) its statutory duties, which caused injury supported by "actual monetary damages." (ECF No. 1-1, pp. 9-10, 12 (Counts I-III, "Wherefore Clause A").) The SAC's request for "actual money damages" further supports its characterization as a personal injury claim. *Id.* The Court should take judicial notice of the initial Complaint's "emotional distress" and "mental anguish" allegations, which supplies the requisite harm for a personal injury claim. *See Henson, supra; Orgone Capital, supra; Barnard, supra. See also Mitchell v. White Motor Co.*, 58 Ill.2d 159, 163 (1974) (two-

year statute of limitations for personal injury claims applies to allegations of actual damages such as "direct physical or mental injury").

Because the SAC can also be construed to allege personal injury claims against defendants for purportedly breaching their duty to collect, store and use plaintiffs' biometric data in compliance with BIPA, Section 13-202's two-year limitations period for personal injury claims can be applied in the alternative, if the SAC is not construed to plead privacy violations subject to Section 13-201 or statutory penalties subject to Section 13-202. Thus, the claims of plaintiffs and any putative class member that fall outside the two-year statute of limitations should be dismissed with prejudice.

4.     **Plaintiffs' BIPA Claims Accrued When Defendants Failed to Comply With BIPA's Policy, Notice and Consent Requirements Prior to the Initial Collection of Their Fingerprints.**

Whether plaintiffs' BIPA claims are subject to the one- or two-year statute of limitations, Sections 13-201 and 13-202 have the same "accrual" provision. Under Section 13-201, "[a]ctions for damages . . . shall be commenced within one year *next after the cause of action accrued*." Section 13-202 requires that actions "be commenced within 2 years *next after the cause of action accrued*." 735 ILCS 5/13-201 and 202 (emphasis added.)

BIPA was passed in 2008. The bedrock foundation of our legal system is that all persons, including plaintiffs, are "presumed to know the law." *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("The law is presumed to be equally within the knowledge of all parties"); *Livingston v. Meyers*, 6 Ill.2d 325, 334 (1955) (in construing and applying a statute, "[i]t must be presumed that people will know the law and abide by its requirements to protect their property interests"). Because plaintiffs are presumed to know the law, they were on notice of any potential right of action BIPA gave them upon the statute's enactment. Plaintiffs cannot excuse their failure to timely file within the one-year statute of limitations on any lack of knowledge of BIPA. *See, e.g.*, *Barlow v. United States*, 32 U.S. 404, 411 (1833) ("The whole course of the jurisprudence, criminal as well as civil, of the common law, points to a … common

19

maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally").

A "cause of action accrues at the time a party's interest is invaded." *Blair*, 369 Ill.App.3d at 324. Under the plain language of BIPA, the violation occurs when a private entity initially "collects" an individual's biometric information "unless it first" complies with Section 15's policy, notice and consent requirements. 740 ILCS 14/15. Here, the SAC alleges that defendants violated BIPA when they "captured" plaintiffs' fingerprints to enroll them in their timekeeping system *without first* complying with Section 15's policy, notice and consent requirements and, at the same time, "disseminated and disclosed" their fingerprints to defendants' third-party vendor without their consent. (ECF No. 1-1, p. 6 ¶¶30-34, p. 9 ¶51, p. 10 ¶¶57-59, p. 11 ¶65.)

In *Rosenbach*, the Illinois Supreme Court explained that an individual suffers a "real and significant" injury *at the time* BIPA is violated and that his privacy right "vanishes into thin air." *Rosenbach,* 2019 IL 123186, ¶34. Thus, plaintiffs were injured and their claims accrued at the time of the alleged violations when hired in 2017. (ECF No. 1-1, p. 2 ¶¶2-3, p. ¶32-33, p. 7 ¶34, p. 9 ¶51, p. 10 ¶¶57-59, p.11 ¶65.) This lawsuit, however, was not filed until March 4, 2019, with the second plaintiff recently added on September 11, 2019 – long after plaintiffs' claims "accrued" in 2017. This lawsuit is, therefore, time-barred by the one-year statute of limitations in Section 13-201.

**D.    The SAC Pleads Legal Conclusions That Defendants "Recklessly" Violated BIPA, Which Must Be Dismissed Or Stricken.**

The SAC fails to allege facts to support a "reckless" violation of BIPA. Instead, it pleads legal conclusions that defendants "recklessly" violated BIPA. Plaintiffs' "reckless" violation claims should be dismissed (or stricken) because the SAC is bereft of any factual allegations of reckless conduct.

"[R]eckless conduct which will support a cause of action … is conduct from which the actor knows [injury] is certain or substantially certain to result" or "situations in which there is a high degree of probability that [injury] will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin.*

*Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). The entire thrust of the SAC is a series of omissions – that defendants failed to create a policy, failed to provide the required disclosures, and failed to obtain plaintiffs' written consent prior to use of the biometric time clocks. (ECF No. 1-1, pp. 9-12 Counts I – III.) The allegations are a classic example of a negligent failure to act – not intentional or reckless conduct.

Plaintiffs further fail to allege that defendants were "certain or substantially certain" of an injury to plaintiffs but consciously disregarded the certain injury. Simply alleging that defendants should have been aware of a statute, but failed to comply with it, does not sufficiently state a claim for "reckless" conduct. *See, e.g.*, *Komorowski v. All-American Indoor Sports, Inc.*, No. 13-2177, 2013 WL 4766800, at *3 (D. Kan. Sept. 4, 2013) ("Merely alleging that a defendant should be aware of a statute and fails to comply with it…is insufficient to state a claim for willfulness."); *Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (granting motion to dismiss because allegations that statute was well-publicized and known in the industry "are not specific to the defendant" and "do not permit the inference that [defendant]'s conduct was anything more than negligent"). Accordingly, the Court should either dismiss or strike plaintiffs' reckless conduct claims.

## CONCLUSION

If the IWCA is applied as written – as it should be here – then plaintiffs' BIPA claims for statutory damages are preempted by it and should be dismissed with prejudice. They are also time-barred by the one-year statute of limitations applicable to privacy claims. In the alternative, the two-year statute of limitations should apply (if the one-year limitations period does not), and the claims of plaintiffs or any putative class member that fall outside the two-year statute of limitations should be dismissed with prejudice. Plaintiffs' "reckless" violation claims should also be dismissed, or alternatively stricken, because the SAC lacks the requisite factual allegations of reckless conduct.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on October 31, 2019, she caused the foregoing ***Memorandum in Support of Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint*** to be filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to:

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Zachary C. Flowerree
Werman Salas, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
*dwerman@flsalaw.com*
*msalas@flsalaw.com*
*sarendt@flsalaw.com*
*zflowerree@flsalaw.com*

David Fish
John Kunze
The Fish Law Firm, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
*dfish@fishlawfirm.com*
*kunze@fishlawfirm.com*

***Attorneys for Plaintiffs***

/s/ Michael V. Furlong
One of the Attorneys for Defendants
TopGolf USA, Inc., Top Golf USA Salt Creek,
LLC and TopGolf USA Naperville, LLC

40058540.5