**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS BURLINSKI and MATTHEW, MILLER, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 19-cv-06700 |
| v. | ) ) | Judge Edmond E. Chang |
| TOP GOLF USA INC., TOPGOLF USA SALT CREEK, LLC, and TOPGOLF USA, NAPERVILLE, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Thomas Burlinski and Matthew Miller have brought a proposed class action against their former employer, Topgolf, for violations of the Illinois Biometric Privacy Act, 740 ILCS 14/1 *et seq*. R. 1-1, Second Am. Compl.[1] Burlinski and Miller allege that Topgolf required its employees to track their shifts using a fingerprint-scan system and that Topgolf later disclosed their fingerprint data to a third-party vendor. In October 2019, Topgolf removed the case to federal court, R. 1, Notice of Removal, and then filed a motion to dismiss the claims, R. 19. The next day, the Plaintiffs filed a motion to remand the case to state court. R. 21. For the reasons discussed below, the motion to remand is denied in part and granted in part, and the motion to dismiss is denied.

---

[1]Citations to the record are noted as "R." followed by the docket number, and when necessary, the page or paragraph number.

1

## I. Background

For purposes of these motions, the Court accepts as true the factual allegations in the complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Topgolf is a company that operates driving range and bar facilities across the country. Second Am. Compl. ¶ 1. Thomas Burlinksi worked as a bartender at Topgolf for a few months in 2017, while Matthew Miller worked in a variety of positions at Topgolf from 2017 through 2019. *Id.* ¶¶ 2-3. Both Burlinksi and Miller were paid by the hour. *Id.*

During this period, Topgolf required its hourly employees to track their time using a biometric fingerprint-scan system. Second Am. Compl. ¶ 4. Specifically, hourly employees were asked to scan their fingerprints each time they began a shift, stopped to take a break, returned from a break, and finished working a shift. *Id.* ¶ 5. According to the Plaintiffs, Topgolf's rationale for using a biometric timecard system, as opposed to identification numbers or badges, was to prevent one employee from clocking in for a different employee. *Id.* ¶ 7.

The Plaintiffs allege that Topgolf, by implementing the biometric time clock system, "captured, collected, and stored" their fingerprint data. Second Am. Compl. ¶ 30. What's more, Topgolf allegedly "disseminated and disclosed" that fingerprint data to a third-party time-keeping vendor. *Id.* ¶ 31. Burlinski asserts that Topgolf never provided him any written disclosures about the collection, retention, destruction, use, or dissemination of his fingerprint data. *Id.* ¶ 32. Similarly, Miller claims that Topgolf never provided him written disclosures until nearly two years into his employment. *Id.* ¶ 33. And disclosure aside, both Burlinski and Miller allege

2

that Topgolf never obtained their consent before collecting their fingerprints in the first place. *Id.* ¶ 34.

Based on these allegations, Burlinski and Miller filed suit against Topgolf in Illinois state court, alleging certain violations of the Illinois Biometric Privacy Act, which has come to be known as BIPA for short. *See* Second Am. Compl. Specifically, Burlinski and Miller brought claims under three separate sections of BIPA:

- *Retention Schedule*: Section 15(a), which requires companies to maintain a public retention and destruction schedule before collecting biometric data, 740 ILCS 14/15(a);

- *Consent to Collect*: Section 15(b), which requires companies to obtain written consent before collecting biometric data, 740 ILCS 14/15(b); and

- *Consent to Disclose*: Section 15(d), which requires companies to obtain written consent before disclosing biometric data to third parties, 740 ILCS 14/15(d).

In addition, Burlinski and Miller seek to represent a class of Illinois Topgolf employees who were required to scan their fingerprints into the biometric time-clock system. *Id.* ¶ 35. The proposed class, according to the Plaintiffs, includes more than 40 members. *Id.* ¶ 37.

In October 2019, Topgolf removed the case to federal court, alleging diversity jurisdiction, 28 U.S.C. § 1332(a), as the basis for subject matter jurisdiction. Notice of Removal. Specifically, Topgolf alleged that complete diversity exists among the parties[2] and the amount in controversy exceeds $75,000. *Id.* ¶¶ 6-13. On the amount-

---

[2]Both Burlinski and Miller are domiciled in and thus citizens of Illinois. Notice of Removal ¶ 6. Corporations are citizens of their state of incorporation and principal place of business. 28 U.S.C. §1332(c)(1). Limited liability companies are citizens of any state in which an LLC member is a citizen. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Here,

3

in-controversy question, Topgolf calculated that Burlinski and Miller were each alleging five BIPA violations and seeking statutory damages of $5,000 per reckless violation, plus attorney's fees (which totaled $26,000 at the time that the notice was filed). *Id.* ¶ 14. In other words: 2 plaintiffs x 5 violations per plaintiff x $5,000 per violation = $50,000, and then $50,000 + $26,000 in fees = $76,000. *Id.*

In addition to the individual claims, Topgolf also argued that, in light of the proposed class action, there was federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Specifically, Topgolf argued that the amount in controversy for the class-action claims exceeds CAFA's $5,000,000 statutory requirement. Notice of Removal ¶¶ 16-19. Here, Topgolf counted 205 potential class members x 5 alleged violations per individual x $5,000 per violation = $5,125,000. *Id.* ¶ 19. With the addition of attorneys' fees, argues Topgolf, the amount in controversy is well over the CAFA minimum. *Id.* Shortly after removing the case, Topgolf filed a motion to dismiss all of the BIPA claims. R. 19.

One day later, Burlinski and Miller filed a motion to remand the case to state court. Their main argument is that the amount in controversy requirements have not been met. For one, Plaintiffs argue that Topgolf improperly aggregated the value of the claims of *both* Burlinski and Miller to reach the $75,000 threshold under 28

---

Top Golf USA Inc. is a corporation formed in Delaware with a principal place of business in Texas. *Id.* ¶ 9. TopGolf USA Salt Creek, LLC has only one member, Top Golf USA Inc., so the Salt Creek LLC is also a citizen of Delaware and Texas. *Id.* ¶ 10. TopGolf USA Naperville, LLC also has only one member, TG Holdings I, LLC. *Id.* ¶ 11. All of the managers of TG Holdings are in turn domiciled in Texas. *Id.* So, TG Holdings is a Texas citizen, which means the Naperville LLC is also a Texas citizen. *Id.* The Plaintiffs do not dispute these citizenship allegations.

U.S.C. § 1332(a). Mot. Remand at 1. Moreover, the Plaintiffs argue that the CAFA removal is also deficient because Topgolf included the value of claims for which the proposed class members lack Article III standing. *Id*.

## II. Legal Standard

On the motion to remand, the general rule is that a defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court in the first place. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Where, as here, defendants invoke diversity jurisdiction, the defendants must demonstrate complete diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Alternatively, for the proposed class action, defendants must allege minimal diversity and an amount in controversy exceeding $5,000,000. 28 U.S.C. § 1332(d).

As for the sufficiency of the complaint, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned

5

up).³ The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Motion to Remand

First up is the motion to remand. As mentioned earlier, only the amount-in-controversy requirement is in dispute. Specifically, Topgolf must demonstrate that the amount in controversy exceeds $75,000 for purposes of the individual claims, 28 U.S.C. § 1332(a), and that the amount of controversy exceeds $5,000,000 for purposes of the proposed class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

---

³This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

Here, the Plaintiffs argue that Topgolf has failed to meet the amount-in-controversy requirements for both so-called "traditional" diversity jurisdiction and diversity jurisdiction under CAFA. R. 22 at 3. Specifically, they point out that Topgolf has impermissibly aggregated the value of the individual claims for *both* Burlinski and Miller to meet the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332(a). *Id*. at 4. In addition, on the $5,000,000 CAFA requirement, the Plaintiffs argue that Topgolf incorrectly included the value of claims for which the proposed class members lack Article III standing. *Id*. at 3.

### 1. Article III Standing for CAFA Claims

Addressing the class allegations first, the Plaintiffs initially argued that there is no diversity jurisdiction under CAFA because, in reaching the $5,000,000 amount-in-controversy threshold, Topgolf incorrectly included the value of claims for which the proposed class members do not have Article III standing. R. 22 at 3. As a reminder, Topgolf counted five separate BIPA violations for purposes of the amount-in-controversy calculation: one Section 15(a) violation, three Section 15(b) violations, and one Section 15(d) violation. *See* Notice of Removal ¶ 19. The Plaintiffs argued in their original motion to remand that the three Section 15(b) notice-and-consent claims should be excluded from the amount-in-controversy calculation because existing caselaw held that there was no Article III standing for those claims. R. 22 at 4. With those claims out of the way, that just left 205 potential class members x 2 potential BIPA violations each, which would not amount to enough to bring the case over the $5,000,000 CAFA threshold. *Id*.

7

Meanwhile, two things happened. First, in May 2020, the Seventh Circuit held that plaintiffs generally *do* have Article III standing to pursue Section 15(b) claims, because Section 15(b) involves a concrete and particularized injury sufficient to confer Article III standing. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624-26 (7th Cir. 2020). The Plaintiffs acknowledge that their Section 15(b) claims "are indistinguishable" from the Section 15(b) claims at issue in *Bryant*, so the Plaintiffs concede that there is Article III standing on those claims. R. 50 at 2. That means Topgolf may properly include the Section 15(b) claims in the CAFA amount-in-controversy calculation. *Id.* On the other hand, the Seventh Circuit also held that plaintiffs generally do *not* have Article III standing to pursue Section 15(a) claims, which deal with the requirement to maintain a publicly available data retention and destruction policy. *Bryant*, 958 F.3d at 626. Again, the Plaintiffs argue that their Section 15(a) claims "largely mirror" the Section 15(a) claims at issue in *Bryant*, but this time, the result is that there is no Article III standing for the Section 15(a) claims and Topgolf therefore may not consider the Section 15(a) claims in the CAFA amount-in-controversy calculation. R. 50 at 3. Topgolf agrees that the Section 15(b) claims should be included and the Section 15(a) claims excluded from the amount-in-controversy calculation. R. 51 at 2-3.

The second development was factual: Topgolf now estimates that there are probably *500* potential class members, instead of the original 205. Def. Position Paper at 4; R. 51-2, Clark Decl. ¶ 5. With that increased class size, the *Bryant* holding no longer matters, because even taking out the Section 15(a) claims, Topgolf asserts that

8

there is enough to reach the $5,000,000 threshold based on just the Section 15(b) and Section 15(d) claims. Def. Position Paper at 5-6. Indeed, Topgolf points out that even under the most restrictive interpretation of the Second Amended Complaint—that is, only one alleged Section 15(b) violation and only one alleged Section 15(d) violation—the increased class size is enough to bring the math up to the CAFA requirement. *Id.* at 5. The Plaintiffs agree that the increased class of 500 potential members is enough to surpass the CAFA amount-in-controversy requirement, and that there is no longer any basis to challenge subject matter jurisdiction.[4] R. 53 at 2. So the motion to remand is denied on the Section 15(b) notice and Section 15(d) disclosure claims, and those claims will proceed in federal court.

That just leaves the Section 15(a) claims, which, as mentioned above, do not present the concrete and particularized injury necessary for Article III standing purposes. Thus, because there is no Article III jurisdiction over the Section 15(a) claims, it makes sense to sever and remand those claims back to state court, as the Plaintiffs have requested. R. 53 at 2. So the motion to remand is granted on the Section 15(a) claim, and the Plaintiffs are free to pursue that claim in state court.

---

[4] This also renders moot the Plaintiffs' original argument that the amount-in-controversy requirement for "traditional" diversity jurisdiction purposes had not been satisfied. As mentioned above, the Plaintiffs initially argued that Topgolf improperly aggregated the claims of Burlinski and Miller to reach the $75,000 threshold under 28 U.S.C. § 1332(a). R. 22 at 3. The Defendants appeared to concede that the aggregation of the claims was wrong but countered that, even when treating the claims of each Plaintiff separately, it was not necessarily a "legal impossibility" for the claims to exceed $75,000. R. 27 at 5. Because the Defendants have sufficiently shown that subject matter jurisdiction exists under CAFA, and the Plaintiffs have accepted that this is no longer a viable basis on which to challenge removal, there is no need to address the arguments on this issue for purposes of the remand motion.

9

**B. Motion to Dismiss**

This brings us to the motion to dismiss the Section 15(b) and Section 15(d) claims. Topgolf makes two overarching arguments in support of dismissal. First, Topgolf argues that the BIPA claims are preempted by the Illinois Workers' Compensation Act. R. 20 at 1. Topgolf also argues that the BIPA claims are time-barred by various statutes of limitation, including the one-year statute of limitations for privacy claims, as well as the two-year statute of limitations for personal injury and statutory penalty claims. For the reasons explained below, both arguments are unpersuasive.

**1. Preemption**

The preemption argument is up first. As a threshold matter, the Court notes that preemption is an affirmative defense. *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018). The Plaintiffs do not need to plead around an affirmative defense, so the claims will be dismissed only if Plaintiffs have pleaded themselves "out of court" by alleging (and thus admitting) the ingredients of a defense. *Chi. Bldg. Design, PC v. Mongolian House Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014).

Here, the Workers' Compensation Act is generally meant to be the exclusive remedy for accidental workplace injuries. *See* 820 ILCS 305/5, 305/11. The Illinois Supreme Court has explained that these two provisions "bar an employee from bringing a common law [or statutory, as in this case] cause of action against his or her employer unless the employee-plaintiff proves: (1) that the injury was not

10

accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990). Here, Topgolf argues that the Plaintiffs have failed to meet these requirements because all of the BIPA violations that they allege constitute unintentional, and thus "accidental," injuries that arose from and happened during the course of their employment. R. 20 at 7. Moreover, Topgolf argues that the emotional distress injuries being claimed by the Plaintiffs count as compensable injuries under the Workers' Compensation Act. *Id*. at 10-11.

The preemption argument is not persuasive. Most importantly, as the Plaintiffs point out, numerous courts facing this precise issue have held that the Workers' Compensation Act does not preempt BIPA claims in the employment context. R. 26 at 4 n.4 (citing nine state trial court cases). It is true that none of these cases are binding on this Court, but it is nonetheless persuasive that so many Illinois state courts have come out the same way. In addition, the Plaintiffs clarify that they are not seeking compensable injuries under the Workers' Compensation Act—rather, they are suing purely because Topgolf allegedly violated their *statutory* rights. *Id*. at 5. And as Plaintiffs correctly point out, the recovery scheme under the Act does not cover these types of purely statutory violations related to biometric privacy. *Id. See also* 820 ILCS 305/8. Moreover, from a purely common-sense standpoint, it seems clear that biometric privacy violations are simply a bad fit for the types of injuries typically contemplated by the Workers' Compensation Act, which, at the end of the

11

day, is meant to provide "financial protection to injured workers." *Murff v. Illinois Workers' Comp. Comm'n*, 70 N.E.3d 273, 277 (Ill. App. Ct. 2017).

Similarly, Topgolf's argument that the alleged BIPA violations here are "accidental" injuries is not convincing. According to Topgolf, these claims constitute accidental workplace injuries because the Plaintiffs failed to plead that any specific intent on the part of Topgolf. R. 20 at 8. But even if the Plaintiffs did not explicitly use the words "specific intent," the Second Amended Complaint clearly alleges that Topgolf required employees to scan their fingerprints into a biometric time-tracking system that collected those fingerprints, failed to give notice or obtain consent before collecting the data, and then disclosed the biometric data to a third-party vendor. *See* Second Am. Compl. All in all, it is hard to read any of those allegations with an "accidental" gloss. The Plaintiffs, for instance, do not ever say that Topgolf was negligent in disclosing the biometric data to the vendor, or that the failure to obtain consent was some sort of accident. Rather, read in context, the Plaintiffs allege that Topgolf intentionally collected employee fingerprints for purposes of maintaining a biometric timekeeping system. *See Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 990 (N.D. Ill. 2019) (holding that similar BIPA complaint alleged intentional violations for IWCA preemption purposes). No accident there.

Last but not least, from a basic statutory-interpretation perspective, Topgolf provides no explanation for why the Illinois General Assembly would have explicitly provided for a cause of action in BIPA, including in the employment context, if the Workers' Compensation Act was genuinely meant to provide the "exclusive remedy"

12

for accidental workplace injuries in the context of biometric data collection and disclosure. *See* 740 ILCS 14/10 (specific reference to employment context). Moreover, as the Plaintiffs point out, preemption would defeat BIPA's purpose, as it has been described by the Illinois Supreme Court: (1) to impose "safeguards to insure that" biometric data is protected "before" it "can be compromised"; and (2) to subject companies that "fail to follow the statute's requirements to substantial potential liability." *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206-07 (Ill. 2019). By essentially foreclosing any avenue of damages liability for employees to sue their employers for biometric privacy violations, preemption would render BIPA useless in the employment context, even though BIPA is clearly meant to apply in that context. Given all this, the BIPA claims are thus not preempted by the Workers' Compensation Act.

## 2. Statute of Limitations

Even if the BIPA claims are not preempted, Topgolf argues in the alternative that the claims are time-barred under various statutes of limitation under Illinois law. R. 20 at 2. As a threshold matter, the Court again notes that, as with preemption, the statute of limitations is an affirmative defense. As explained earlier, the Plaintiffs are not required to "anticipate and attempt to plead around defenses," so dismissal is only proper where the allegations "plainly reveal that the action is untimely under the governing statute of limitations." *Mongolian House, Inc.*, 770 F.3d at 613-14 (cleaned up).

13

Here, there is no dispute that BIPA itself does not specify a limitations period. And other district courts have noted that this is an unsettled question. *See Cothron v. White Castle Sys., Inc.*, 2020 WL 4569694, at *3 n.4 (N.D. Ill. Aug. 7, 2020) (accepting that "the statute of limitations for BIPA claims has not been definitively resolved and that such claims are potentially subject to a one-, two-, or five-year statute of limitations") (cleaned up). Topgolf, though, argues that the claims are subject to the one-year limitations period for privacy claims under 735 ILCS 5/13-201. R. 20 at 14. Topgolf also argues that, at most, the claims are subject to the two-year limitations period that applies to both statutory penalties and personal injury claims under 735 ILCS 5/13-202. *Id.* at 17. The Court is not persuaded by either of those arguments.

First, with regard to the one-year limitations period for privacy claims, the Plaintiffs point out that the statutory text explicitly refers to claims for "slander, libel or for publication of matter violating the right of privacy." 735 ILCS 5/13-201. The Section 15(b) claims do not involve any "publication" element, so this one-year limitations period cannot apply to the Section 15(b) claims. The Section 15(d) disclosure claim is a bit closer, but even there, Topgolf cites no authority for the proposition that disclosure of biometric data to a single, third-party timekeeping vendor would meet the definition of "publication" as it is used in the context of other common-law privacy torts. *See Miller v. Motorola, Inc.*, 560 N.E.2d 900, 903 (Ill. App. Ct. 1990) (explaining that general rule for purposes of public-disclosure claim is that

14

"the required communication must be more than that made to a small group; rather, the communication must be made to the public at large").

To be fair, Topgolf does point out that, in the defamation context, the Illinois Appellate Court has held that the "element of publication is satisfied, even within a corporate environment, where the communication is made to any third party." *Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 191 (Ill. App. Ct. 2005). This would suggest that Topgolf's disclosure of the biometric data to the timekeeping vendor could potentially constitute a "publication" for purposes of 735 ILCS 5/13-201. But *Popko* is not quite on point. First, *Popko* was a case about defamation, and under Illinois state law, "publication" is an explicit element of any defamation claim. *Popko*, 823 N.E.2d at 188. So, no matter how broadly or how narrowly the Illinois Appellate Court ultimately defined "publication," it does not change the fact that defamation would clearly fall within the scope of claims listed in 735 ILCS 5/13-201 because defamation is clearly a cause of action requiring proof of "publication." Here, by contrast, nothing in the text of BIPA requires "publication" as an element of a Section 15(d) claim. Rather, the statute prohibits "disclosure," 740 ILCS 14/15(d), which should be read as distinct from publication, which connotes wider dissemination. *See Benitez v. KFC Nat. Mgmt. Co.*, 714 N.E.2d 1002, 1007 (Ill. App. Ct. 1999) ("The fact that publication is not an element of intrusion upon seclusion is crucial, since the plain language of section 13-201 indicates that the one-year statute of limitations governs only libel, slander and privacy torts involving publication … ").

15

Similarly, the *West Bend* case that Topgolf cites in its position paper, R. 51 at 7, does not apply here. *See W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2020 WL 1330494 (Ill. App. Ct. Mar. 20, 2020). There, the Illinois Appellate Court held that a BIPA disclosure claim *did* count as a publication—but only in the context of interpreting an insurance policy, and not for purposes of interpreting 735 ILCS 5/13-201. So that case has no bearing on the statute-of-limitations issue here. All in all, the Court disagrees that biometric privacy claims under BIPA are subject to the one-year limitations period in 735 ILCS 5/13-201.

Nor is it clear that the two-year limitations period for personal injury claims and statutory penalties applies to either the Section 15(b) or the Section 15(d) claims. For one, Topgolf fails to explain why an alleged violation of purely statutory rights under BIPA—which is meant to give the Plaintiffs some degree of control over the collection and disclosure of their biometric data—should count as "an injury to the person" as that phrase is used in 735 ILCS 5/13-202. The Defendants urge the Court to take judicial notice of the fact that the Plaintiffs initially alleged emotional distress and mental anguish, which should be enough to establish a personal-injury claim. R. 20 at 18. But even if that is true, the Second Amended Complaint clearly states that Plaintiffs are *not* alleging that they or any of the class members "suffered *physical* or *psychological* injuries during their employment as a result of Defendant's violations of the Biometric Information Privacy Act." Second Am. Compl. at 3 n.1. This is the operative complaint going forward, and it is clear that the Plaintiffs are not pursuing any sort of personal injury claim, regardless of what they initially alleged.

16

As for the statutory-penalty argument, the Court is not convinced that the statutory damages available under BIPA should be treated as a statutory penalty. A statutory penalty: "(1) imposes automatic liability for a violation of its terms; (2) sets forth a predetermined amount of damages; and (3) imposes damages without regard to the actual damages suffered by the plaintiff." *Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 599 (Ill. 2013). In contrast, a remedial statute (as opposed to a penal statute) is "designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." *Id*. That being said, even a remedial statute can impose penalties as "one part of the regulatory scheme, intended as a supplemental aid to enforcement rather than as a punitive measure" without being converted into a penal statute. *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1017 (Ill. 1981).

Here, BIPA provides for "liquidated damages of $5,000 *or actual damages*, whichever is greater." 740 ILCS 14/20(2) (emphasis added). Thus, for BIPA purposes, the statutory damages appear to be an alternative mode of relief to actual damages, in that it is only when the actual damages are relatively small or unquantifiable that the statutory damages come into play. This is not a case where "it is irrelevant whether plaintiffs have suffered actual damages." *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 308 (Ill. 2009). Moreover, statutory damages here are not necessarily automatic or predetermined; the Plaintiffs still need to prove that Topgolf acted intentionally or recklessly in order to recover the $5,000 amount. *See* 740 ILCS 14/20(2). Moreover, given that the goal of BIPA is to set up a regulatory framework

17

to protect biometric privacy, it is safe to conclude that BIPA is not a penal statute, even if it provides for statutory damages. Those statutory damages are clearly part of BIPA's broader remedial scheme. So, the two-year statute of limitations imposed by 735 ILCS 5/13-202 does not apply. *See Meegan v. NFI Indus., Inc.*, 2020 WL 3000281, at *4 (N.D. Ill. June 4, 2020) ("BIPA's provision for actual damages and the regulatory intent of its enactment show that it is a remedial statute not within the scope of the two-year statute of limitation imposed by section 13-202.").

So, assuming that neither the one-year or the two-year statute of limitations applies, then that means the catch-all five-year statute of limitations applies to the BIPA claims. 735 ILCS 5/13-205 (providing that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). *See also* R. 26 at 8 n.5 (citing nine state trial court cases applying the five-year limitations period to BIPA). And under that five-year framework, there is no dispute that the BIPA claims have been brought within the allowable time period.

In any event, even if it turns out that one of the shorter statutes of limitation does apply, then there is still nothing in the Second Amended Complaint "definitively demonstrating" that the Plaintiffs learned that Topgolf gave their fingerprint information to the timekeeping vendor more than one year before the case was filed— in other words, there is nothing definitively demonstrating that the Plaintiffs have necessarily pleaded themselves out of court. *See Meegan*, 2020 WL 3000281 at *3. That matters because, again, the Plaintiffs "are not required to anticipate affirmative

18

defenses in their complaints," so "it is not a basis to dismiss that claim on the pleadings." *Id*.

For all of these reasons, Topgolf has failed to show, for purposes of the pleading stage, that the BIPA claims here are time-barred.

### 3. Recklessness

Finally, Topgolf also briefly argues that the Plaintiffs have failed to plead that Topgolf was "reckless" in violating BIPA. This is again a losing argument. First, to the extent that recklessness is a prerequisite for certain types of statutory *remedies*, it is premature to raise the issue at the pleading stage. *See* 740 ILCS 14/20(2) (plaintiff can recover certain liquidated damages "against a private entity that intentionally or recklessly violates a provision of" BIPA). A more appropriate time for Topgolf to make this argument would be after the close of discovery. And to the extent that Topgolf is addressing recklessness as a substantive requirement of BIPA, the Plaintiffs have sufficiently alleged recklessness under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2). BIPA has been in effect for more than 10 years, and the Plaintiffs have clearly alleged that Topgolf has failed to comply with the requirements of the statute. Second Am. Compl. ¶¶ 60, 66. Beyond that, it is not necessary for the Plaintiffs to "plead details regarding what [Topgolf] knew or did not know and when." *Rogers v. BNSF Ry. Co.*, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019). Thus, the motion to dismiss is denied.

## IV. Conclusion

For the reasons stated above, the motion to remand is denied in part and granted in part. The Section 15(a) claim is remanded, which the Court will effectuate by deeming those claims to be dismissed without prejudice to refiling in state court. Topgolf's motion to dismiss is denied. Topgolf's answer is due by September 25, 2020. The parties shall confer on the discovery schedule and file a joint initial status report (using the template in R. 11) by September 28, 2020. The status hearing of September 28, 2020 is reset to October 9, 2020, at 8:30 a.m., but to track the case only (no appearance is required, and the case will not be called). Instead, the Court will review the status report and set the schedule.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2020