**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS BURLINSKI and MATTHEW MILLER on behalf of themselves and all other persons similarly situated, known and unknown, | Case No. 1:19-cv-06700 |
| Plaintiffs, | Judge Edmond E. Chang |
| v. | Magistrate Judge Young B. Kim |
| TOP GOLF USA INC., TOPGOLF USA SALT CREEK, LLC, and TOPGOLF USA NAPERVILLE, LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

Douglas M. Werman
dwerman@flsalaw.com
Zachary C. Flowerree
zflowerree@flsalaw.com
Werman Salas P.C.
77 W. Washington Street, Suite 1402
Chicago, IL 60602
(312) 419-1008

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
The Fish Law Firm, P.C.
200 East 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590

*Attorneys for Plaintiffs and
Others Similarly Situated*

TABLE OF CONTENTS

I.      Introduction ....................................................................................................................1

II.     Procedural History ..........................................................................................................1

III.    Summary of Settlement Terms ........................................................................................4

        A.      The Proposed Settlement Class ...........................................................................4

        B.      Settlement Fund; Allocation of the Fund; Payments to Class Members ................4

        C.      Uncashed Checks Will Be Distributed to the Unclaimed Property Division ..........5

        D.      Defendant's Representations of Compliance with BIPA .......................................5

        E.      Release of Claims ...............................................................................................5

        F.      Settlement Administration ...................................................................................6

        G.      Notice of Class Action Settlement .......................................................................7

        H.      Distribution of Notice .........................................................................................7

        I.      Service Awards ...................................................................................................8

        J.      Attorney Fees and Costs .....................................................................................8

IV.     The Court Should Grant Preliminary Approval ...............................................................9

        A.      Settlement of Class Action Litigation is Favored .................................................9

        B.      The Court Will Likely Be Able to Approve the Settlement Under Rule
                23(e)(2) ............................................................................................................10

                1.      The Class Representatives and Class Counsel have Adequately
                        Represented the Proposed Settlement Class – Rule 23(e)(2)(A) .............10

                2.      The Settlement Was Negotiated at Arm's Length – Rule
                        23(e)(2)(B) ..........................................................................................10

                3.      The Settlement Provides Adequate Relief to the Class – Rule
                        23(e)(2)(C) ..........................................................................................11

                        a.      Costs, risks, and delay of trial and appeal ....................................12

                        b.      Effectiveness of the proposed method of distributing relief
                                to Class Members .........................................................................13

                        c.      The terms of the proposed attorney fee award, including
                                timing of payment .......................................................................14

                        d.      Any Agreement required to be identified under Rule
                                23(e)(3) .......................................................................................14

                4.      The Settlement Treats Settlement Class Members Equitably
                        Relative to Each Other – Rule 23(e)(2)(D) ............................................14

        C.      The Court Will Likely Be Able to Certify the Settlement Class for
                Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii) ..........................14

i

    1.    Certification Will Be Appropriate Under Rule 23(a) ..............................14
          a.    Numerosity ...................................................................15
          b.    Commonality ................................................................15
          c.    Typicality .....................................................................15
          d.    Adequacy of the Class Representative .........................16
                i.    The Class Representatives have an interest
                      in the litigation and have no conflict with
                      Class Members ...............................................16
                ii.   Class Counsel is experienced and qualified.....................16
    2.    Certification Will Be Appropriate Under Rule 23(b) .............................17
          a.    Common questions predominate ...................................17
          b.    A class action is a superior mechanism.........................18
   D.    Plaintiffs' Notice Program and Class Notice Form Merit Approval ...................19
V.    Conclusion .................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*
    521 U.S. 591 (1997) ...................................................................................17

*Burlinski v. Top Golf USA Inc.*
    No. 1:19-CV-06700, 2021 WL 425111 (N.D. Ill. Feb. 4, 2021) .....................................13

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ........................................................................9

*Davis v. Heartland Employment Svcs. LLC*
    *1:19-cv-680 (N.D. Ill.)* ................................................................................11

*Dixon v. The Wash. & Jane Smith Home*
    1:17-cv-8033 (N.D. Ill.) ................................................................................11

*Gammon v. G.C. Servs., L.P.*
    162 F.R.D. 313 (N.D. Ill. 1995) ......................................................................16

*Gaspar v. Linvatec Corp.*
    167 F.R.D. 51 (N.D. Ill. 1996) ........................................................................14

*General Tel. Co. of Sw. v. Falcon*
    457 U.S. 147 (1982) .....................................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
    2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ......................................................9

*In re Ravisent Techs., Inc. Sec. Litig.*
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................................12

*In Re: White Castle System, Inc.*
    No. 20-8029 ................................................................................................3

*Jones v. CBC Rest. Corp.*
    1:19-cv-06736 (N.D. Ill.) ...............................................................................11

*Kernats, et al. v. Comcast Corp.*
    Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219 (N.D. Ill. Oct. 20, 2010).........17

*Kiefer v. Bob Evans Farms, LLC*
    17-L-12 (Tazewell Cty.) .................................................................................11

*Kou Thao Vang v. KeyTronicEMS*
    2019 WL 337589 (D. Minn. Jan. 28, 2019).......................................................9

*Lane v. Schenker, Inc.*
  3:19-cv-00507-NJR (S.D. Ill.) ...........................................................................11

*Leung v. XPO Logistics, Inc.*
  326 F.R.D. 185 (N.D. Ill. 2018) ........................................................................15

*Lopez-McNear v. Superior Health Linens, LLC*
  19-cv-2390 (N.D. Ill.) .........................................................................................12

*Marshall v. Life Time Fitness, Inc.*
  17-CH-14262 (Cir. Ct. Cook Cty.) ...................................................................11

*McDonald v. Symphony Bronzeville Park, LLC*
  Ill. Sup. Ct. No. 126511 ................................................................................3, 13

*Murray v. GMAC Mortg. Corp.*
  434 F.3d 948 (7th Cir. 2006) .............................................................................18

*Oshana v. Coca-Cola Co.*
  472 F.3d 506 (7th Cir. 2006) .............................................................................15

*Pierre v. Midland Credit Mgmt., Inc.*
  2017 WL 1427070 (N.D. Ill. Apr. 21, 2017) ...................................................16

*Tims v. Black Horse Carriers, Inc.*
  No. 1-20-0563 ...............................................................................................3, 13

*Wal-Mart Stores, Inc. v. Dukes*
  *564 U.S. 338, 350 (2011* ...................................................................................15

*Zhirovetskiy v. Zayo Group, LLC*
  17-CH-09323 (Cir. Ct. Cook Cty.) ...................................................................11

**Other Authorities**
2 Herbert B. Newberg & Alba Conte,
  Newberg on Class Actions § 11.41 (3d ed. 1992) .............................................9

Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain
  Language Guide, at 3 (2010) .............................................................................13

Illinois Biometric Information Privacy Act ................................................................passim

Illinois Workers' Compensation Act .................................................................................2

Manual for Complex Lit., at § 21.632–34 ........................................................................9

**Rules**
F.R.C.P. R 23 .......................................................................................................passim

## I.    Introduction

Plaintiffs and proposed class representatives Thomas Burlinski and Matthew Miller ("Plaintiffs" or "Settlement Class Representatives") are former Illinois employees of Defendants (collectively "Defendants" or "Topgolf"). In this lawsuit, Plaintiffs allege that Defendants violated the Illinois Biometric Information Privacy Act ("BIPA") by collecting and disclosing their Illinois employees' biometric data through a finger-scan timekeeping system without following BIPA's written disclosure and consent requirements. Defendants deny Plaintiffs' allegations. Through a private mediation with retired Magistrate Judge Sydney I. Schenkier, the Parties reached a $2,633,400 class settlement for an estimated 2,660 Settlement Class Members.[1] Because the settlement is fair, reasonable, adequate, and meets all requirements under Rule 23, the Court should grant preliminary approval and enter the Parties' proposed order.

## II.    Procedural History (Ex. 1, Settlement Agreement, § I)[2]

On March 4, 2019, plaintiff Thomas Burlinski filed a Class Action Complaint in the Circuit Court of DuPage County, alleging that defendants Top Golf USA Inc. and Topgolf USA Salt Creek, LLC violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, by requiring him and other employees to use a biometric timekeeping system as part of their jobs. In particular, plaintiff Burlinski alleged that defendants violated BIPA in three ways: (1) collecting biometric fingerprint identifiers and information from him and other Illinois employees without following BIPA's informed written consent procedures; (2) possessing biometric identifiers and information without a publicly available data retention schedule and destruction

---

[1]    Capitalized terms not defined herein shall have the meaning set forth in the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"), which is Exhibit 1.

[2]    Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations.

policy; and (3) disclosing biometric identifiers and information from him and other employees to defendants' timekeeping vendor without consent. Defendants deny these allegations.

On July 31, 2019, in response to Defendants' Section 2-619 Motion to Dismiss, plaintiff Burlinski received leave of court to file a First Amended Complaint. The amended pleading re-organized Burlinski's single count BIPA claim into three counts and dropped his negligence and emotional distress allegations in response to defendants' argument that his lawsuit was preempted by the Illinois Workers' Compensation Act's ("IWCA") exclusive remedy provisions.

On September 11, 2019, plaintiff Burlinski filed a Second Amended Class Action Complaint to add a second proposed class representative, Matthew Miller, and a third defendant, Topgolf USA Naperville, LLC. Topgolf removed the case to federal court on October 9, 2019. Topgolf subsequently moved to dismiss on October 31, 2019, arguing that Plaintiffs' claims (1) were preempted by the IWCA, (2) accrued with the "first collection" of plaintiffs' alleged finger scan and were untimely under the one or two-year statutes of limitations, and (3) failed to adequately plead a "reckless" violation of BIPA. On November 1, 2019, Plaintiffs filed a Motion to Remand the case to state court. On December 9, 2019, Topgolf moved for leave to supplement its Motion to Dismiss to add that BIPA is unconstitutional "special legislation" in violation of Article IV, Section 13 of the Illinois Constitution. The Court denied Topgolf's motion to supplement on January 9, 2021.

On September 3, 2020, the Court issued a written opinion denying Topgolf's Motion to Dismiss. The Court denied Plaintiffs' Motion to Remand as to the Section 15(b) and 15(d) claims but held there was no Article III standing to support Plaintiffs' Section 15(a) claim for failure to provide a publicly-available retention and destruction policy and remanded the Section 15(a) claim. On October 9, 2020, Defendants filed their Answer and Affirmative and Other Defenses to

the Second Amended Complaint.

Topgolf twice moved to stay discovery based on the financial hardship Topgolf suffered during the COVID-19 pandemic and because various interlocutory appeals were pending that were potentially case-dispositive. *See McDonald v. Symphony Bronzeville Park, LLC,* Ill. Sup. Ct. No. 126511, *In Re: White Castle System, Inc.*, No. 20-8029, and *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563. The Court denied Topgolf's initial Motion to Stay without prejudice to its renewal and, on October 12, 2020, ordered discovery to proceed on the merits of the named Plaintiffs' claims and the propriety of class certification. Defendants renewed their Motion to Stay on November 13, 2020, and the Court directed that discovery continue until it ruled on the pending motion.

The Parties served interrogatories and requests to produce, responded to written discovery requests and produce responsive documents. Plaintiffs also served two subpoenas on Topgolf's third-party vendors. On February 4, 2021, the Court denied Defendants' Motion to Stay (Renewed), and the parties proceeded to mediation. On February 19, 2021, the Parties filed a Joint Motion to Pause discovery pending mediation, which the Court granted on February 25, 2021.

The Parties scheduled a private mediation with experienced mediator and retired federal Magistrate Judge Sidney I. Schenkier (Ret.). In advance of mediation, the Parties exchanged mediation statements with the relevant legal and factual arguments for their respective positions in the case. On April 16, 2021, the Parties participated in a day-long mediation with Judge Schenkier. Through mediation, the Parties reached a settlement in principle. That settlement is now memorialized in the Settlement Agreement attached here as Exhibit 1.

3

## III. Summary of Settlement Terms

### A. The Proposed Settlement Class (Ex. 1, Settlement Agreement, § III)

The Settlement Class Representatives seek preliminary approval of the following class:

> All Illinois employees who used a biometric fingerprint or finger scanner at Topgolf venues in Illinois during the Class Period [March 4, 2014 to the date of preliminary approval] without first signing a biometric consent form, and do not timely exclude themselves from the settlement ("the Settlement Class" or "Settlement Class Members").

Topgolf estimates there are 2,660 Settlement Class Members.

### B. Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, § IV.2)

While denying all liability and wrongdoing, Topgolf has agreed to pay a Gross Fund of $2,633,400.00 to resolve the claims in this case on a class action basis. The Gross Fund is the maximum amount that Topgolf shall pay under this Settlement, unless the number of Settlement Class Members increases by more than 3% over the current estimate of 2,660, in which case the Gross Fund shall be increased on a pro rata basis (*i.e.*, $990 per person added over the current estimate of 2,660).

None of the Gross Fund shall revert back to Topgolf. If twenty percent (20%) or more of the Settlement Class Members submit valid requests for exclusion from the Settlement (*i.e.*, opt-out), Topgolf may elect to either withdraw from and not be bound by the terms of this Agreement or reduce the Gross Fund. The Gross Fund shall be decreased on a *pro rata* basis for each Settlement Class Member that timely and validly requests to be excluded from the Settlement Class (*i.e.*, $990 less for each Settlement Class Member that timely and validly requests to be excluded from the settlement). Other than any reductions in the Gross Fund based on the above, none of the Gross Fund shall revert back to Topgolf.

4

The "Net Fund" is the Gross Fund minus the following deductions, which are subject to Court approval: Settlement Class Counsel's attorney fees and costs; the Settlement Administrator's costs; and the Settlement Class Representatives' Service Awards. The Net Fund shall be distributed pro rata to Settlement Class Members without a claims process.

### C.     Uncashed Checks Will Be Distributed to the Unclaimed Property Division
(Ex. 1, Agreement, § IV.9)

Settlement Class Members will have 150 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Unclaimed Property Division of the Illinois Treasurer's Office. This will enable Settlement Class Members to request their settlement payments even if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/app/faq-general (last visited Apr. 30, 2021) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

### D.     Defendant's Representations of Compliance with BIPA
(Ex. 1, Settlement Agreement, § IV.15)

Topgolf represents that since October 1, 2018, they have maintained BIPA consents and policies in Illinois. In March 2020, Topgolf stopped using the HID DigitalPersona 4500 scanner due to the COVID-19 pandemic and deleted finger scan data previously collected and stored for those employees. At no time did Topgolf disclose or transfer finger scan data for Illinois employees to any third parties.

### E.     Release of Claims (Ex. 1, Settlement Agreement, § IV.3)

Subject to final approval by the Court of the Settlement, Settlement Class Members who do not timely and validly exclude themselves from the Settlement forever waive and release any

and all claims which they have or may have against the Released Parties[3] under the Biometric Information Privacy Act, and other related federal, state, and local laws and common law including, but not limited to, claims for statutory or liquidated damages, actual damages, penalties, declaratory or injunctive relief, attorneys' fees, costs, expenses and interest.

In exchange for their Service Awards, Plaintiffs Thomas Burlinski and Matthew Miller forever waive and release any and all claims which they have or may have against the Released Parties arising out of their employment with defendants, the termination of their employment with defendants, the Biometric Information Privacy Act and other related federal, state, and local laws and common law, claims for statutory or liquidated damages, actual damages, penalties, declaratory or injunctive relief, attorneys' fees, costs, expenses and interest; any violation of any law, constitution, statute, regulation, city or local ordinance including, but not limited to, any common law claim (e.g., wrongful discharge, defamation, invasion of privacy, infliction of emotional distress, negligence, breach of any contractual obligations, representations or warranties, interference with contractual or business relations or any other tort or breach of contract claim); any right to continued employment or reemployment with the Company; and any claim for additional compensation beyond what the Company offered in the Settlement Agreement.

F.    **Settlement Administration** (Ex. 1, Settlement Agreement, § IV.4.)

Plaintiffs have selected Analytics Consulting to act as the Settlement Administrator. The Settlement Administrator's costs are capped at $30,000, which shall be paid from the Gross Fund.[4]

---

[3]    The term "Released Parties" means Topgolf and their current and former owners, affiliates, parents, subsidiaries, divisions, officers, directors, shareholders, agents, employees, attorneys, insurers, benefit plans, predecessors, and successors. *Id.* at § IV.3.a. Secret POS Systems, Inc. d/b/a Focus POS Systems, Inc. and Alpha POS Services, Inc. are expressly excluded from this release. *Id.*

[4]    The proposal from Analytics Consulting estimates administration costs at $22,366.

**G.     Notice of Class Action Settlement**
(Ex. 1, Settlement Agreement, §§ IV.5.c-d, IV.10.b and Attach. A)

Among other things, Plaintiffs' proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how to receive payment, request exclusion, and submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Awards; and (6) the Final Approval Hearing details. The Settlement website, anticipated to be www.TGFingerScanSettlement.com, will also have the Notice, the Settlement Agreement, the Preliminary Approval Order, the Motion for Attorney Fees, Costs, and Settlement Class Representatives' Service Awards (once available), the Motion for Final Approval (once available), and the Final Approval Order (once available).

**H.     Distribution of Notice** (Ex. 1, Settlement Agreement, §§ IV.5, IV.11.b)

The Settlement Administrator will implement a robust class notice program to ensure that Settlement Class Members learn of their rights in the Settlement. First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run a database search to locate an updated address and shall promptly mail the Notice to the updated address. Second, where personal email addresses are available for Settlement Class Members, the Settlement Administrator shall send the following email:

- Email subject: "Legal Notice: Topgolf Finger Scan Lawsuit Settlement."

7

- Email body: "Top Golf USA Inc., Topgolf USA Salt Creek, LLC, and Topgolf USA Naperville, LLC ("Topgolf") have settled a class action lawsuit that claims Topgolf violated Illinois law by collecting fingerprint scan data from Illinois employees through a biometric timekeeping system without written notice and consent. While Topgolf has denied any legal violation occurred, the parties have reached a compromise to end this litigation, and avoid the related time, expense and uncertainty of further litigation. The Settlement includes all Illinois employees who used a biometric fingerprint or finger scanner at Topgolf venues in Illinois from March 4, 2014 to [insert the date of preliminary approval] without first signing a biometric consent form. To learn about the settlement and your rights in it, please review the Notice of Class Action Settlement available at the settlement website: www.TGFingerScanSettlement.com."[5]

**I.      Service Awards** (Ex. 1, Settlement Agreement, § IV.8)

Under the Settlement Agreement, Class Counsel may request that the Court award the Settlement Class Representatives up to $7,500 each as Service Awards for their work in prosecuting this lawsuit on behalf of the Settlement Class, answering written discovery, and recovering money for the Settlement Class. Settlement Class Counsel will file the request for the Service Awards with their motion for attorney fees and costs, described below.

**J.      Attorney Fees and Costs** (Ex. 1, Settlement Agreement, §§ IV.5.e., IV.7)

Under the Settlement Agreement, Settlement Class Counsel may request that the Court award them up to one-third of the Gross Fund as attorney fees plus their litigation expenses. Settlement Class Counsel will file their request for attorney fees and costs within 30 days of initial Notice distribution and the Settlement Administrator will make the filing available on the Settlement website. The Notice will advise Settlement Class Members about how to review the request for attorney fees and costs. This will enable Settlement Class Members to see the request when deciding whether to exclude themselves from the Settlement or object to it.

---

[5]      Or another website address agreed to by the Parties if this one is not available. This applies to all references to the Settlement website in this Motion.

## IV. The Court Should Grant Preliminary Approval

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq* With this Motion, Plaintiffs request that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

Rule 23 was amended effective December 1, 2018. Before then, Rule 23 did not address standards for preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 359981, at *11 (E.D.N.Y. Jan. 28, 2019). At the preliminary approval stage, district courts decided whether the proposed settlement fell "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019); "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must

9

determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card*, 2019 WL 359981, at \*12 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Settlement Class Counsel and the Settlement Class Representatives pursued this case vigorously on behalf of the potential class. Settlement Class Counsel briefed and defeated Topgolf's motion to dismiss, served written discovery requests and obtained relevant documents, briefed and defeated a motion to stay, and served two third-party subpoenas and conferred with the recipients. The Settlement Class Representatives responded to written discovery on behalf of the proposed class action claims in the case. Before mediation, Settlement Class Counsel obtained a report from a consulting expert on Topgolf's biometric technology and wrote a detailed mediation statement that laid out Plaintiffs' factual and legal theories. At mediation, Settlement Class Counsel negotiated a settlement that obtains meaningful non-reversionary monetary relief, without a claims process, and with an appropriate release of claims.

#### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of neutral mediator and retired federal Magistrate Judge Sydney I. Schenkier. The Settlement was not collusive.

3.    The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

The Settlement Class Representatives claim that they and potential class members are entitled to $1,000 per violation if they are able to prove Defendant's alleged violations of BIPA were "negligent."[6] 740 ILCS 14/20(1). The $2,633,400.00 Gross Fund represents a gross recovery of $990 per Settlement Class Member. If the Court approves Class Counsel's attorney fees, costs, the Service Awards, and the settlement administration costs, Settlement Class Counsel estimate the net recovery for each Settlement Class Member will be approximately $630.00 per person. The recovery here compares favorably with or exceeds other employment BIPA class settlements where courts have granted preliminary and final approval:

**BIPA Settlement Chart**

| Case | Judge | Date | Class Size Estimate | Per Class Member | Attorney Fees |
|------|-------|------|--------------------|-----------------|----------------|
| *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (Cir. Ct. Cook Cty.) | Flynn | Apr. 8, 2019 | 2,475 | $450 gross[7] | 40% of fund |
| *Marshall v. Life Time Fitness, Inc.,* 17-CH-14262 (Cir. Ct. Cook Cty.) | Tailor | Aug. 7, 2019 | 6,000 | $270 net[8] | One-third of fund |
| *Dixon v. The Wash. & Jane Smith Home,* 1:17-cv-8033 (N.D. Ill.) | Kennelly | Aug. 20, 2019 | 1,378 | $1,085 or $768 gross[9] | One-third of fund |

---

[6]    While BIPA allows recovery of $5,000 per violation for "intentional" or "reckless" violations, 740 ILCS 14/20(2), Plaintiffs do not believe they would have prevailed on this theory. In response to an interrogatory, Topgolf stated that it first learned of BIPA in August 2018 and implemented biometric consents and policies weeks later.

[7]    This settlement included a claims process, which limited the amount distributed to the class.

[8]    The settlement also included dark web monitoring that the parties valued at $130 per class member.

[9]    A total of 837 class members in the potential two-year potential limitations period received the larger number ($1,085.00) and a total of 541 class members outside of the potential two-year but inside the potential five-year limitations period received the smaller award ($768.12). The defendant retained money from uncashed checks in this settlement.

| Case | Judge | Date | Class Size Estimate | Per Class Member | Attorney Fees |
|---|---|---|---|---|---|
| *Kiefer v. Bob Evans Farms, LLC*, 17-L-12 (Tazewell Cty.) | Kouri | Feb. 18, 2020 | 1,501 | $964 | One-third of fund |
| *Jones v. CBC Rest. Corp.*, 1:19-cv-06736 (N.D. Ill.) | Alonso | Oct. 22, 2020 | 4,053 | $800 gross | 32.5% of total settlement |
| *Lane v. Schenker, Inc.*, 3:19-cv-00507-NJR (S.D. Ill.) | Rosenstengel | Nov. 17, 2020 | 316 | $1,000 gross | One-third of fund |
| *Davis v. Heartland Employment Svcs. LLC*, 1:19-cv-680 (N.D. Ill.)[10] | Valderrama | May 18, 2021 | 10,836 | $500 gross | One-third of fund |
| *Lopez-McNear v. Superior Health Linens, LLC*, 19-cv-2390 (N.D. Ill.) | Pallmeyer | Apr. 27, 2021 | 790 | $1,000 gross | One-third of fund |

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. If the case had not settled, the Parties would have completed depositions and likely taken steps to enforce subpoenas on the third-party provider of the finger-scan device that Topgolf used. After that, Plaintiffs would have served an expert witness report about how Topgolf's timekeeping

---

[10]     Unlike the other settlements in this chart, this settlement has not yet reached final approval.

system collected biometric identifiers and/or biometric information covered by BIPA. This likely

would have resulted in Topgolf hiring its own expert witness. Following that additional discovery,

Plaintiffs would have filed a motion for class certification.

After extensive litigation, Topgolf could have obtained a victory or greatly reduced the

potential class recovery based on its defenses in the lawsuit, including:

(1) that Plaintiffs' damages claims were barred by the exclusivity provisions of the Workers' Compensation Act, an issue which is currently on appeal before the Illinois Supreme Court;[11]
(2) that the statute of limitations under BIPA is one or two years instead of five years;[12] and
(3) that Topgolf's biometric device did not collect biometric identifiers or biometric information as defined by BIPA;
(4) that Topgolf's alleged violations of BIPA were not negligent or reckless; and
(5) that any award of liquidated damages per class member would excessive in light of the alleged absence of injury and thus the damages would violate Topgolf's due process rights under the Illinois and/or United States Constitutions.

Instead of expensive, complicated, and protracted litigation, this Settlement provides significant

monetary relief to Settlement Class Members now.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and, where available, email.

Ex. 1, Settlement Agreement, §§ IV.5, IV.11.b. Combined with a Settlement website, this

comprehensive notice program satisfies due process and Rule 23. The Settlement Administrator

will distribute funds to Settlement Class Members via direct checks without any requirement to

---

[11]     Although this Court rejected the preemption argument in denying Topgolf's Motion to Dismiss, *Burlinski v. Top Golf USA Inc.*, No. 1:19-CV-06700, 2021 WL 425111, at *5 (N.D. Ill. Feb. 4, 2021), the Illinois Supreme Court will make the ultimate determination. *See McDonald v. Symphony Bronzeville Park, LLC*, Case No. 126511 (Ill.) (petition for leave to appeal accepted on January 26, 2021).

[12]     As with preemption, this Court rejected Topgolf's statute of limitations arguments in denying the Motion to Dismiss, *Burlinski*, 2021 WL 425111, at ** 6-8, but the Court could certainly revisit the issue if the First District Appellate Court adopts a shorter limitations period in a pending appeal. *Tims v. Black Horse Carriers, Inc.*, Case No. 1-20-0563 (1st Dist).

first submit a claim form. Since Topgolf has contact information for Settlement Class Members, direct distribution of checks is superior to a claims process. Federal Judicial Center. *See* Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide, at 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms.").

**c.**      **The terms of the proposed attorney fee award, including timing of payment**

Settlement Class Counsel will seek an award of attorney fees of up to one-third of the Gross Fund plus litigation costs. Ex. 1, Agreement § IV.7. Settlement Class Counsel  The maximum fee that Settlement Class Counsel may request is equal to or below the fees awarded in the BIPA class settlements cited on pages 11-12, *supra*. *See* BIPA Settlement Chart. The Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Agreement § IV.5.j.

**d.**      **Any Agreement required to be identified under Rule 23(e)(3)**

The Settlement Agreement is Exhibit 1 to this Memorandum. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

**4.**      **The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

The Settlement treats Class Members equally by distributing awards to Settlement Class Members from the Net Settlement Fund on a *pro rata* basis. Ex. 1, Agreement, § IV.2.

**C.**      **The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)**

**1.**      **Certification Will Be Appropriate Under Rule 23(a)**

To obtain class certification, Plaintiffs must demonstrate that their claims meet the four

14

requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 2,660, Ex. 1, Agreement, § II, which satisfies numerosity.[13]

### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Topgolf collect biometric data of Class Members without following BIPA's notice and consent requirements? Answering this common question resolves the question of liability for all Class Members. Commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The

---

[13] The implicit ascertainability requirement is also satisfied because the Settlement Class is objectively defined and all Class Members are identified in Topgolf's employment records. *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 193 (N.D. Ill. 2018).

requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Settlement Class Representatives and Settlement Class Members arise from the same conduct: Defendant's use of a biometric finger scan system for its Illinois employees allegedly without following BIPA's notice and consent requirements. Typicality will be met.

### d.     Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

i.   **The Class Representatives have an interest in the litigation and have no conflict with Class Members**

The Settlement Class Representatives allege the same claims as Settlement Class Members and have no interests antagonistic to them. Thus, the Class Representatives have "a clear stake in a successful outcome – [] damages for [themselves] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). The Settlement Class Representatives exhibited competence throughout the case, including by answering written discovery in support of the class claims in the case.

ii.  **Class Counsel is experienced and qualified**

Settlement Class Counsel will also fairly and adequately protect the interests of the Settlement Class Members. A court considers the following four factors when appointing class

counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are highly experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including numerous other BIPA class actions. Ex. 2, Flowerree Declaration ¶¶ 7-9 and accompanying Firm Resume; Ex. 3, Fish Declaration and accompanying Firm Resume. In this case, Settlement Class Counsel demonstrated their commitment to the class by briefing and defeating Topgolf's Motion to Dismiss, by briefing and defeating Topgolf's Motion to Stay, by serving and obtaining written discovery from Topgolf, by serving subpoenas on two third-parties and conferring with those recipients, by obtaining a consulting expert witness to analyze Topgolf's biometric technology, and by negotiating a favorable resolution at the mediation. Ex. 2, Flowerree Declaration, ¶ 10. By their actions in this case and relevant experience, Class Counsel are well-positioned to protect the interests of Class Members.

## 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521

17

U.S. 591, 623 (1997). "Thus, the Plaintiffs bear the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? The common question predominating in this case is whether Topgolf collected Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b.      A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is 2,660 individual lawsuits for recoveries possibly as low as $1,000, plus attorneys' fees and costs. As each case would require resolution of identical factual and legal issues, the resulting efficiencies achieved by class-wide resolution are obvious.

**D.      Plaintiffs' Notice Program and Class Notice Form Merit Approval**
(Ex. 1, Settlement Agreement, §§ IV.5, IV.11.b and Attach. A)

The proposed Notice complies with due process and the Federal Rule of Civil

Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily understood language: (i) the nature of the
> action; (ii) the definition of the class certified; (iii) the class claims, issues, or
> defenses; (iv) that a class member may enter an appearance through an attorney if
> the member so desires; (v) that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii)
> the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The proposed Notice exceeds this bare minimum and complies with

the requirements of Rule 23(c)(2)(B). And the plan for the Settlement Administrator to distribute

individual Notices directly to Settlement Class Members is reasonable.

**V.      Conclusion**

Because the Settlement makes significant monetary relief available to Settlement Class

Members who might have recovered nothing without the Settlement, the Court should grant

preliminary approval.

Dated: June 4, 2021

Respectfully submitted,

/s/Zachary C. Flowerree
One of Plaintiffs' Attorneys


Douglas M. Werman
dwerman@flsalaw.com
Zachary C. Flowerree
zflowerree@flsalaw.com
**Werman Salas P.C.**
77 W. Washington Street, Suite 1402
Chicago, IL 60602
(312) 419-1008

19

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
**The Fish Law Firm, P.C.**
200 East 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590

*Attorneys for Plaintiffs and
Others Similarly Situated*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

was filed with the Court's CM/ECF filing system on June 4, 2021,  which will serve a copy on

all counsel of record.

/s/ *Zachary C. Flowerree*
*One of the Attorneys for Plaintiffs*

20